**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

VOTER REFERENCE FOUNDATION, LLC

         Plaintiff,

v.                                                                      Case Number: _____

WILLIAM GALVIN, in his official capacity
as Secretary of the Commonwealth of
Massachusetts,

         Defendant.

---

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

**COMES NOW** Plaintiff Voter Reference Foundation, LLC ("VRF"), by and through undersigned counsel, and for its Complaint against the Honorable William Galvin, in his official capacity as Secretary of the Commonwealth of Massachusetts (the "Secretary"), states and alleges as follows:

1.      VRF is a nonprofit organization dedicated to increasing voter participation in elections while protecting election integrity. In service of those goals, VRF engages in political speech regarding states' maintenance of accurate voter rolls.

2.      Specifically, VRF requests state voter rolls, which officials must make public under the National Voter Registration Act ("NVRA"). Public disclosure and inspection of the rolls is the only way for the public to determine how and whether officials are maintaining accurate rolls. VRF's election professionals and database administrators analyze the data to identify potential inaccuracies, such as discrepancies between the number of individuals registered to vote and the number with a credit for having voted in a particular election. It not only makes these findings

1

publicly available, but it engages in dialogue with states where discrepancies are identified. This helps officials to remedy any issue in the state's voter list maintenance. Even if there are no issues with list maintenance, identifying and explaining the discrepancies helps build an audit trail so that the public can understand how and why the discrepancies came to exist, ultimately building public confidence in the administration of elections and increasing voter participation.

3.     VRF also engages in political speech on its various online forums, including VoterReferenceFoundation.com and VoteRef.com, to inform the public regarding voter list maintenance across the country. It makes the data it obtains from the states under the NVRA available to the public at VoteRef.com (the "Website") so that interested citizens in Massachusetts and many other states can search public voting records on the Website, provided they first agree to VRF's terms of service. VRF maps the data to make it easily searchable and reviewable, allowing participants to compare state records of who has voted, where, and when, with their own sources of information. Citizen participants can then engage in political speech with VRF and with each other concerning the accuracy and maintenance of the voter rolls. VRF also encourages users of its Website to contact their local election officials if they identify incorrect or outdated information in the rolls.

4.     The first step to undertaking these activities in each state is to request and obtain that state's voter data.

5.     As it has done in dozens of other states, VRF lawfully requested Massachusetts voter data, including a current copy of the voter registration data from the central registry of voters, from the Secretary's Elections Division (the "Division") under the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1).

6.     The Division, on behalf of the Secretary, is responsible for voter data requests.

7.     But the Secretary and the Division refused to make the requested Massachusetts voter data available to VRF, telling VRF's representative that state law prohibited VRF's request and its only route to obtaining the information it seeks is to make requests with every local election official.

8.     VRF followed up, via counsel, apprising the Secretary that this denial was a violation of the NVRA's Public Disclosure Provision. Despite VRF's sufficient and timely notice, and multiple attempts to resolve the issue, the Secretary never responded to VRF's counsel.

9.     The Secretary and the Division justify this restriction on access by citing a Massachusetts law deeming voter data to be non-public records under state open records law, even though that same statute makes the same data available to political parties, various committees, and whomever the Secretary designates. But as VRF notified the Secretary, the NVRA preempts state law that impermissibly impedes the implementation and objectives of the NVRA, including state law that narrows or eliminates the access rights under the Public Disclosure Provision. *See* Count I, NVRA Preemption. Because the records VRF requested must be made public under the NVRA's Public Disclosure Provision, the Secretary violated the NVRA by failing to provide those records to VRF. *See* Count II, NVRA Violation.

10.     VRF sues the Secretary in his official capacity to obtain declaratory and injunctive relief vindicating its federal statutory right to access Massachusetts voter data. *See* Counts I–II.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this case pursuant to each of the following:

    a.     52 U.S.C. § 20510(b), as VRF is an "aggrieved party", and this action seeks to redress violations of the NVRA;

    b.     28 U.S.C. § 1331;

c.      28 U.S.C. § 2201(a), in that it seeks to secure declaratory relief; and,

d.      28 U.S.C. § 2202 in that it seeks to secure permanent injunctive relief.

12.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) in that Defendant is situated within this judicial district.

## PARTIES

13.     VRF is a nonpartisan Ohio nonprofit limited liability company and subsidiary of Restoration of America, a 501(c)(4) social welfare organization. VRF is dedicated to ensuring transparent, accurate, and fair elections in the United States of America. VRF's mission is to provide public access to official government data pertaining to elections, including voter registration rolls, and to provide thorough, and sometimes critical, analysis of state voter list maintenance efforts. The public dissemination of this information is intended to make the state's election processes more transparent, increase confidence in those processes, and increase voter participation. Analyses of aggregate state voter data can help identify processes to better maintain the accuracy and currency of state voter rolls. A close review of individual voter data can show that it is wrong or was entered incorrectly. VRF encourages users of its Website that identify errors in individual voter data to report these errors directly to the appropriate government official.

14.     Defendant William Galvin is the Secretary of the Commonwealth of Massachusetts and is Massachusetts' chief election official under the NVRA. *See* 52 U.S.C. § 20509; *see also Delgado v. Galvin*, No. 12-CV-10872, 2014 WL 1004108, at *1 (D. Mass. Mar. 14, 2014) ("The Secretary is the Commonwealth's 'chief election official' for NVRA purposes.").

15.     As the NVRA chief election official, Secretary Galvin is "responsible for coordinating the Commonwealth's NVRA responsibilities." *See id.*

4

16.     Secretary Galvin performs the functions of the Secretary of the Commonwealth and can be found in Boston, Massachusetts, which is in this judicial district.

17.     Secretary Galvin is named in his official capacity only.

## BACKGROUND FACTS

**A.     The National Voter Registration Act Requires States to Make Voter Records Publicly Available.**

18.     The NVRA was enacted to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," 52 U.S.C. § 20501(b)(1); to "enhance[ ] the participation of eligible citizens as voters in elections for Federal office," § 20501(b)(2); "to protect the integrity of the electoral process," § 20501(b)(3); and "to ensure that accurate and current voter registration rolls are maintained." § 20501(b)(4).

19.     The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of — (A) the death of the registrant; or (B) a change in the residence of the registrant[.]" 52 U.S.C. § 20507(a)(4)(A)–(B). Otherwise, under Section 20507(a)(3)(A)–(B), "the name of a registrant may not be removed from the official list of eligible voters except — (A) at the request of the registrant;" or "(B) as provided by State law, by reason of criminal conviction or mental incapacity."

20.     The NVRA mandates transparency in these processes by requiring states to make certain records available to the public:

(i) Public disclosure of voter registration activities

(1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a

declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

(2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

52 U.S.C. § 20507(i) (the "Public Disclosure Provision").

21.     Those "records" which must be made available pursuant to the NVRA include the Massachusetts Central Registry of Voters (the "Registry"), which holds the records VRF sought here. The Registry is a compilation of all registered voters in the Commonwealth which is maintained by the Secretary. Mass. Gen. Laws Ann. ch. 51, § 47C.

22.     The Registry includes the following data for Massachusetts voters: name, residential address, party or political designation, effective dates of registration, date of birth, occupation, veteran status, and nationality. Mass. Gen. Laws Ann. ch. 51, § 47C; 950 Mass. Code Regs 58.03.

23.     Upon information and belief, the Registry also contains data showing voters who were removed or canceled from any voter list, and data reflecting the voting history of voters.

24.     The NVRA provides a private right of action to any person "aggrieved" by a violation of the NVRA, 52 U.S.C. § 20510(b), including a party whose request for records under the Public Disclosure Provision is denied.

**B.      Federal and State Law Mandate That Massachusetts Implement Certain Programs and Activities Conducted for the Purpose of Ensuring the Accuracy and Currency of Official Lists of Eligible Voters.**

25.     The Help America Vote Act ("HAVA") requires Massachusetts to maintain a "single . . . computerized statewide voter registration list . . . contain[ing] the name and registration information of every legally registered voter in the State." 52 U.S.C. § 21083(a)(1)(A).

26.     Similar to the NVRA, HAVA requires Massachusetts' election system to "include provisions to ensure that voter registration records in the State are accurate and are updated regularly." 52 U.S.C. § 21083(a)(4).

27.     HAVA also mandates that "[a]ll voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official." 52 U.S.C. § 21083(a)(1)(A)(vi).

28.     HAVA further requires "appropriate State or local election official[s to] perform list maintenance with respect to the computerized list on a regular basis . . . in a manner that ensures that . . . the name of each registered voter appears in the computerized list;" that "only voters who are not registered or who are not eligible to vote are removed from the computerized list;" and that "duplicate names are eliminated from the computerized list." 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B)(i)–(iii).

29.     Massachusetts law also mandates programs and activities to ensure that voter registration records in the State are accurate and updated regularly. Massachusetts' programs and activities for ensuring accurate voter registration records, or to ensure that they are updated regularly, include, but are not limited to, the following:

- Mass. Gen. Laws Ann. ch. 51, § 2 (registrars shall correct the current annual registrar of registered voters who adopt a new name)
- § 4 (registrars shall make a list annually containing the name, date of birth, occupation, veteran status, nationality, and residence of citizens)
- § 14 (on the first day of every month, a list of names of all residents eighteen or older who died shall be transmitted to the registrars)
- § 14A (registrars shall have the assistance of the police department, assessors, supervisors of school attendance, or other suitable officers or employees in making lists)
- § 35 (registrars shall compare all omitted listings with the annual register of voters for the preceding year and if an omitted person is entitled to vote, they shall be entered)

- § 37 (requiring registrars to prepare an annual register containing the names of all qualified voters in list created in § 4)
- § 37A (the name and address of individuals not entered in the annual registrar or fails to vote for two consecutive years shall be maintained on an inactive voter list)
- § 38 (registrars shall correct any error in their original list when informed of errors by the personal application of a listed person)
- § 41 (requiring registrars to preserve all written documents relating to listing and registration for two years)
- § 42H (upon receipt of completed affidavits of voter registration from various sources registrars shall add the registrant's name, address, and effective date of registration to the annual registrar)
- § 46 (upon receipt of a completed affidavit of voter registration, registrars shall place the affidavit in their files and add the voter to the current annual register of voters)
- § 47 (registrars may decline to enter a person's name on the annual register if after examination of the affidavit of registration it appears the person is not qualified to be a registered voter)
- § 47A (those who filed an affidavit of registration that are 16 shall be entered into the current annual register with the designation "pre-registrant" that shall be removed when they attain full age permitted by law)
- § 47C (state secretary shall maintain a central registry of voters which shall contain and shall govern the operation of said central registry)
- § 55 (registrars shall prepare voting lists made up of the names entered in the annual registrar and shall contain a separate voting list for inactive and active voters)
- § 58 (registrars shall add to the list new names added to the annual register after the voting lists have been posted)
- § 66 (state agencies, as deemed necessary by the state secretary, shall provide data to maintain accurate and complete voter lists)
- 950 Mass. Code Regs. 58.03 (setting the requirements for what the central registry of voters must contain)
- 58.04 (requiring registrars to review data contained in the central registry of voters).

## C.  **Massachusetts Selectively Restricts Access to Its Voter Registration Data.**

30.     As referenced above, the Registry includes voter data of all Massachusetts voters.

Mass. Gen. Laws Ann. ch. 51, § 47C.

31.     Generally, Massachusetts makes "Public Records" available for inspection. Mass.

Gen. Laws Ann. ch. 66, § 10(a).

32.     However, Massachusetts explicitly prohibits the disclosure of the names and addresses in the Registry: "[t]he names and address contained in said central registry *shall not be a matter of public record…"* Mass. Gen. Laws Ann. ch. 51, § 47C (emphasis added).

33.     In the very next breath, Massachusetts makes an exception to its own restriction on access to voter data, making it publicly available to *some* requesters:

> [P]rovided however, that [the names and addresses contained in said central registry] *shall be available* to state party committees, statewide candidate committees, state ballot question committees, the jury commissioner, adjutant general and any other individual, agency or entity that the state secretary shall designate by regulation consistent with the purposes of this section, at a fair and reasonable cost not to exceed the cost of printing or preparing computer reasonable documents.

*Id.*

34.     Massachusetts thus prevents the public from obtaining voter data contained in the Registry, while purporting to provide it to certain political and other groups favored by the Commonwealth. Massachusetts also delegates to the Secretary the power to "designate by regulation" "any other individual, agency, or entity" to receive the data "consistent with the purposes of this section." The statute never identifies the "purposes of this section" and provides no substantive criteria to guide the Secretary in deciding which groups and individuals will get the data, and which will not.

35.     Regardless, because the data contained in the Registry are "records" that must be made available under the Public Disclosure Provision, Massachusetts cannot hide behind state law to avoid its federal disclosure obligations. *See infra,* Part D. Its restrictions on public access are preempted.

**D.** **The Registry and Its Contents Are "Records" Which Must Be Made Available Under the Public Disclosure Provision.**

36.     The Registry, and the voter registration data it contains, are "record[s]" that "concern[] the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" which must be disclosed under the Public Disclosure Provision. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 49 (1st Cir. 2024); 52 U.S.C. § 20507(i)(1).

37.     A "program" is "a plan of procedure" or "schedule or system under which action may be taken toward a desired goal," while an "activity" is a "natural or normal function or operation." Webster's Third New International Dictionary 22, 1812 (1993).

38.     Both federal and state law require Massachusetts to make ongoing, continuous efforts to verify applicants' eligibility to vote, register eligible voters in its Registry, revise voter registration records, remove ineligible voters from its voter rolls, and maintain records of all these activities. *See supra,* Part B.

39.     Each of these processes "is a 'program' because it is" a plan of procedure "carried out in the service of a specified end—maintenance of voter rolls." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012). And each "is an 'activity' because it is a particular task and deed of [Massachusetts] election employees," a normal operation for which they are responsible. *Ibid*.

40.     Massachusetts' after-the-fact list-maintenance activities ensure that the voter rolls remain both current and accurate by updating the relevant information as voters move, die, change their names, change their addresses, or change their party affiliation. *See also* 52 U.S.C. §§ 20507(a)(4) and (b)–(g), 21083(a)(2)(B) and (a)(4) (requiring States, under both the NVRA and

10

HAVA, to conduct continuous list maintenance activities while imposing safeguards to prevent improper removals).

41. These registration, maintenance, and removal activities are, by their very nature, "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," *see* 52 U.S.C. § 20507(i)(1), because the entire purpose of conducting these programs and activities is to ensure that people that are on the voter roll are eligible and that those that are not eligible are removed or not allowed on the roll in the first instance.

42. Thus, the Registry is a "record" of Massachusetts list maintenance "programs" or "activities" "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" because the Registry is the only and best collection of changes to the statewide voter roll, as well as the reflection of the roll's currency.

43. The only way to meaningfully evaluate whether the state is faithfully and accurately performing these list maintenance "programs" and "activities" is to review the underlying voter data itself, including the data contained in the Registry.

44. State laws that purport to prevent public disclosure of a state's voter registration list are preempted by the NVRA. *See Bellows*, 92 F.4th at 55 (The Public Disclosure provision "evinces Congress's belief that public inspection, and thus public release, of [state voter data] is necessary to accomplish the objectives behind the NVRA. [] To find otherwise would be to prevent the public from 'protect[ing] the integrity of the electoral process' and 'ensur[ing] that accurate and current voter registration rolls are maintained' throughout the states") (citing 52 U.S.C. § 20501(b)(3)–(4)).

**E.     VRF Analyzes and Shares Voter Data Made Available Under the NVRA on Its Website.**

45.     VRF maintains two related, but distinct projects. The first project is accomplished in-house without the need to publish voter data online for public inspection. This project consists of VRF's election professionals comparing the total number of ballots cast in a particular election to the number of voters with a credit in their vote history file for having voted in a particular election, as reported in a state's voter rolls.

46.     Though not necessarily indicative of fraud or any malicious activity, there are sometimes discrepancies between the two numbers. When there are, VRF attempts to contact state election officials regarding the discrepancy and "work backwards" to determine why there might be a difference. VRF then seeks to publish the "audit trail" so that citizens can understand how and why voter registrations are removed from the voter list.

47.     Through this process, VRF has identified discrepancies in other states and worked with state officials to explain the difference.

48.     Second, as referenced above, VRF operates its Website to provide public access to official government data pertaining to elections, including the very same voter registration rolls that VRF obtains from the states and tried to obtain from Massachusetts. The public dissemination of this information is intended to make the state's election processes more transparent, to increase confidence in those processes, and to, in turn, increase voter participation.

49.     The Website typically provides the same information made public by the state agency charged with maintaining the voter registration database. For example, a user can typically view a voter's name, registration address, registration date, year of birth, party affiliation, registration status, precinct, and voting participation history.

50.     VRF does not seek social security numbers, phone numbers, email addresses, and driver's license numbers, even if made available by the State, and VRF does not publish those data points on the Website even if provided.

51.     Educational material on VoterReferenceFoundation.com explains voter data, where it comes from, and how it can be used to track the accuracy of voter rolls and increase voter participation.

52.     On VoteRef.com, citizens who agree to VRF's terms of service can check their own voting status and voting history, as well as those of their neighbors, friends, and others, and are thereby able to "crowdsource" the process of rectifying any errors. The public is enabled to check the validity of the data by recognizing common errors in larger data sets; for example, citizens could examine the data for their precinct and recognize many voters were given placeholder birthdates. This also allows citizens to encourage others to vote, increasing overall voter participation.

53.     A close review of the data can show that it is wrong or was entered incorrectly. VRF encourages users of the Website to report these errors directly to the appropriate Secretary of State, clerk, or other election official.

54.     As addressed above, VRF accomplishes its efforts to create and maintain the Website by requesting the voter registration data directly from state agencies.

55.     After it acquires raw voter data from a state, VRF's database analysts map the data that would otherwise be unusable by the public and put the data into a searchable, understandable format for the public to review and analyze. In many states, access to the data is prohibitively expensive, and members of the general public lack the knowledge to map the raw data in a usable manner.

56.     VRF intends to post this data for the public to access and view free of charge so that the public can fulfill its oversight duties under the NVRA.

57.     VRF currently has voter data for 31 states and the District of Columbia posted on the Website.

58.     VRF desires to access, post, distribute, and otherwise use publicly available Massachusetts voter data on the Website in the future so that the public may become and remain informed regarding Massachusetts elections and voter registration rolls, and conduct the oversight envisioned in the NVRA.

59.     VRF's actual and proposed use and dissemination of voter data is limited to those records made publicly available under the NVRA's Public Disclosure Provision.

60.     VRF desires to update its Website over time with new data from the Division.

61.     VRF is unable to perform either of its projects or carry out its mission because the Secretary refuses to provide it with Massachusetts voter data.

**F.     VRF First Requested Massachusetts Voter Data on June 27, 2024.**

62.     On June 27, 2024, VRF sent a request to the Division seeking the following records under the NVRA's Public Disclosure Provision:

1.  A current copy of the Massachusetts voter registration data from the central registry of voters; and

2.  Voter registration data for all voters removed or canceled from any voter list (e.g. active list, inactive list, suspended list, purged list, deleted list, etc.) between November 8, 2022, and present date, along with voting history/credit data for each voter that voted in the November 8, 2022, general election, including the method of voting (election day polling place, absentee early, etc.), and the voting jurisdiction the vote occurred in.

(together, the "Requested Data"). A true and correct copy of the June 27, 2024 Request is attached as Exhibit A and is incorporated by reference.

63.     On July 12, 2024, Debra O'Malley, a representative of the Division responded to VRF's request, stating "[u]nder section 47C of chapter 51 of the Massachusetts General Laws, such information contained in the state voter database is not a public record available from this office," citing Mass. Gen. Laws Ann. ch. 51, § 47C and Mass. Gen. Laws. Ann. ch. 4 § 7(a).

64.     Mrs. O'Malley went on to note that "the records [VRF] requested are available for public disclosure and copying from the local election officials," and suggested VRF acquire the data by submitting requests to each election official in Massachusetts. *Id*.

65.     A true and correct copy of the Secretary's July 12, 2024 response is attached hereto as Exhibit B and is incorporated by reference.

**G.     VRF Notifies the Secretary That He Is in Violation of the NVRA for Failing to Produce the Voter Data VRF Requests.**

66.     Before an injured party may file suit for a violation of the NVRA, it must "provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). The injured party may file suit only if "the violation is not corrected within 90 days after receipt of a notice" or "within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office[.]" *Id*. § 20510(b)(2). But notice need not be provided if the violation occurred "within 30 days before the date of an election for Federal office." *Id*. § 20510(b)(3).

67.     The Secretary violated the NVRA, at the latest, on July 12, 2024, when Mrs. O'Malley denied VRF's NVRA request and directed it to seek the records elsewhere despite the fact that the Secretary is obligated by state and federal law to maintain the Requested Data in the central registry of voters.

68.     On August 19, 2024, VRF sent the Secretary a Notice of Violation of the National Voter Registration Act (the "NVRA Notice").

69.     A true and correct copy of the NVRA Notice is attached hereto as Exhibit C and is incorporated by reference.

70.     In the NVRA Notice, VRF apprised the Secretary of his statutory duty to make the Requested Data sought in VRF's June 27, 2024 request available for public inspection pursuant to the NVRA, and that his denial of VRF's June 27, 2024 request was a violation of the NVRA's Public Disclosure Provision. *Id*. The NVRA Notice also apprised the Secretary that Massachusetts' restriction on public access to the Requested Data is preempted by the NVRA. *Id*.

71.     Finally, VRF explained that the Secretary cannot selectively make the Requested Data, records made publicly available under the NVRA, to some groups but not others, as it purports to do under Mass. Gen. Laws Ann. ch. 51, § 47C by making the Registry available to some political parties and committees, but not members of the general public. *See* Ex. C (citing *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F.Supp.3d 932 (C.D. Ill. 2022)).

72.     The NVRA Notice stated that because the November 5, 2024 general election was less than 120 after the Secretary's violation, the Secretary was obligated to correct the identified violations of the NVRA and make the Requested Data available to VRF within 20 days. *See* 52 U.S.C. § 20510(b)(2) ("If the violation is not corrected . . . within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."). *Id*.

73.     VRF informed the Secretary that it would seek legal recourse if he did not take timely and specific action to correct the violation. *Id*.

74.     The Secretary never responded to VRF's NVRA Notice.

75.     The Secretary did not cure his violation and otherwise failed to make the Requested Data available to VRF.

76.     On September 10, 2024, VRF's counsel again gave written notice to the Secretary and his counsel that although the 20-day cure period had expired on September 9, 2024, VRF would give the Secretary until close of business on September 11, 2024 to correct the violation before pursuing legal action.

77.     A true and correct copy of the September 10, 2024 email to the Secretary is attached hereto as Exhibit D and is incorporated by reference.

78.     The Secretary again failed to respond to VRF or otherwise make the Requested Data available to VRF. As of the filing date of this lawsuit, the Secretary has never acknowledged, let alone responded to, any of VRF's communications after its initial request.

79.     By sending its NVRA Notice and providing the requisite 20-day cure period before bringing suit, VRF fully complied with the NVRA's pre-suit notice requirements before filing this Complaint.

## COUNT I
### ACCESS BAN:
### PREEMPTION BY THE NATIONAL VOTER REGISTRATION ACT
### 52 U.S.C. § 20507(i)

80.     Plaintiff restates and realleges the allegations in Paragraphs 1 through 79 as if fully rewritten verbatim herein.

81.     The NVRA's Public Disclosure Provision requires each state to maintain for at least two years and "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official voter lists of eligible voters." 52 U.S.C. § 20507(i)(1).

82.     The Public Disclosure Provision confers rights on members of the public to request and be given access to those "records."

83.     Massachusetts law prevents access to "records" which must be made available under the NVRA's Public Disclosure Provision, including by classifying the data in the Registry as non-public records under Mass. Gen. Laws Ann. ch. 51, § 47 and using that classification as a basis to deny voter data requests, even when those requests are made under federal law (the "Access Ban").

84.     The Access Ban is preempted by the NVRA because it prevents the public, including VRF, from inspecting the Requested Data, a "records" which must be made publicly available under the NVRA's Public Disclosure Provision.

85.     "Records," as used in the NVRA's Public Disclosure Provision, includes individual and identifiable voter information files, including those maintained in statewide databases. Every court to examine the issue has agreed. *See e.g., Pub. Int. Legal Found., Inc. v. Knapp,* Case No. 3:24-cv-1276-JFA, Slip Op. at *9 (D.S.C. September 18, 2024) (recognizing that the "weight of authority surrounding the NVRA supports [the] conclusion" that voter data in the South Carolina's computerized voter registration database are "records" under the NVRA); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 49, 54, 56 (1st Cir. 2024) (voter registration list from Maine's central voter registration system available under NVRA; contrary state laws are preempted); *Voter Reference Foundation, LLC v. Torrez,* 2024 WL 1347204, Slip Op. at *139 (D.N.M. March 29, 2024) (same); *Public Interest Legal Foundation v. Chapman,* 595 F.Supp.3d 296 (M.D. Pa. 2022) (state was required to disclose records from computerized compilation of each county's voter registration list related to every registrant whose registration was cancelled because of their noncitizen status); *Judicial Watch, Inc. v. Lamone*, 399 F.Supp.3d 425, 439

(D. Md. 2019) (individual voter registration information "records"); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335–36 (4th Cir. 2012) (registration applications are "records"); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 940 (C.D. Ill. 2022) (voter list is "record"); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014); *Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543, at \*5 (N.D. Ill. June 1, 2021); *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at \*13 (S.D. Fla. Mar. 30, 2018).

86.     The NVRA specifically requires states to make reasonable efforts to maintain the accuracy of voter rolls, 52 U.S.C. § 20507(a)(4), and documents reflecting or related to this maintenance function are "records" which must be made available for public inspection. *See* § 50507(i)(1) (Public Disclosure Provision applies to "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]").

87.     Congress expressly stated that the NVRA has four core objectives relevant to this case: "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," 52 U.S.C. § 20501(b)(1); to "enhance [] the participation of eligible citizens as voters in elections for Federal office," *id*. § 20501(b)(2); "to protect the integrity of the electoral process," *id*. § 20501(b)(3); and "to ensure that accurate and current voter registration rolls are maintained." *Id*. § 20501(b)(4).

88.     The Access Ban contradicts Congress's stated objectives in the NVRA and creates many improper obstacles to its implementation.

89.     First, "[o]rganizations . . . have the resources and expertise that few individuals can marshal. By excluding such organizations from access to voter registrations, the State law

undermines Section 8(i)'s efficacy." *Judicial Watch, Inc. v. Lamone*, 399 F.Supp.3d 425, 445 (D. Md. 2019). VRF has resources that individual citizens do not: it can purchase statewide data, which typically costs thousands of dollars per state. It can then purchase that data in multiple states so that it can be aggregated, and voter behavior can be analyzed across multiple jurisdictions. It also has access to the expertise and resources needed to convert the large and difficult-to-use data files produced by most states into a format that citizens without computer programming and data analysis skills can easily search on a website.

90.     The Access Ban undermines this purpose by preventing organizations like VRF from obtaining the Requested Data, and other data from the Registry, while permitting other groups to access the same data.

91.     The state cannot selectively make NVRA records available to some groups but not others. *See Matthews*, 589 F.Supp.3d 932. In *Matthews*, the court considered whether the Illinois Secretary of State could make the statewide voter list available to only "political parties." *Id*. at 943. The court concluded that such a restriction violates the NVRA and that Illinois' voter list must be made available to the public on the same terms it is made available to parties. *Id*.

92.     Strikingly similar circumstances exist here where the Secretary claims that VRF cannot access the Requested Data, but cites a statute requiring that the same records be made available to "state party committees, statewide candidate committees, state ballot question committees, the jury commissioner, adjutant general and any other individual, agency or entity that the state secretary shall designate." Mass. Gen. Laws ch. 51, § 47C.

93.     This Access Ban, including the "refusal to make the statewide voter registration list available for viewing by individuals the same way the list is available to political parties," is itself preempted by the NVRA. *See Matthews*, 589 F. Supp. at 943.

94.     VRF is harmed by the Access Ban because it is being unlawfully refused access to the Requested Data that is essential to the core projects for which it exists.

95.     Further, the Secretary suggests that VRF could seek the same records from local election officials, presumably by making identical requests to dozens of county and town clerks and election offices. This "solution" will result in substantial costs to VRF to obtain data that is already collected and maintained in the central registry pursuant to federal law, *see* 52 U.S.C. § 21083, further defying the Commonwealth's obligation to make the Requested Data available "at a reasonable cost." 52 U.S.C. 20507(i)(1).

96.     VRF is further harmed by the Secretary's refusal to produce the Requested Data because doing so prevents VRF from engaging in First Amendment protected speech and association with other citizens regarding voter roll maintenance.

97.     Preventing organizations like VRF from obtaining and sharing voter data conflicts with the express objectives of the NVRA.

98.     Thus, the Massachusetts Access Ban is preempted by the NVRA.

99.     VRF is an "aggrieved party" under 52 U.S.C. § 20510(b)(1).

100.    VRF complied with all pre-suit notice requirements under the NVRA by providing timely and sufficient notice describing Massachusetts' violations before filing this suit. *See above*, ¶¶ 66–73.

### COUNT II
### VIOLATION OF NVRA PUBLIC DISCLOSURE PROVISION
### REFUSAL TO FULFILL JUNE 27, 2024 REQUEST
### 52 U.S.C. § 20507(i)(1)

101.    Plaintiff restates and realleges the allegations in Paragraphs 1 through 100 as if fully rewritten verbatim herein.

102.     On June 27, 2024, VRF sent a request to the Division requesting the Requested Data compiled pursuant to Mass. Gen. Laws Ann. ch. 51, § 47C. *See* Ex. A.

103.     As addressed above, the Requested Data, the Registry and the data contained within it are "records" which must be made publicly available under the NVRA's Public Disclosure Provision because they are "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1).

104.     The Secretary failed and/or refused to provide the Requested Data in response to VRF's request, denying the request on July 12, 2024. *See* Ex. B.

105.     The Secretary violated the NVRA's Public Disclosure Provision by failing or refusing to provide the Requested Data to VRF.

106.     On August 19, 2024, VRF sent its NVRA Notice to the Secretary informing the Secretary that his refusal to make the Requested Data available violates the NVRA. *See* Ex. C.

107.     The Secretary did not provide the Requested Data, even after VRF's NVRA Notice.

108.     By failing to provide the Requested Data to VRF, the Secretary has violated the NVRA's Public Disclosure Provision.

109.     VRF is harmed by the Secretary's refusal to produce the Requested Data because it is being unlawfully refused access to voter data that is essential to the core projects for which it exists.

110.     VRF is further harmed by the Secretary's refusal to produce the Requested Data because doing so prevents VRF from engaging in First Amendment protected speech and association with other citizens regarding voter roll maintenance.

111.     VRF is an "aggrieved party" under 52 U.S.C. § 20510(b)(1).

112.    VRF complied with all pre-suit notice requirements under the NVRA by providing timely and sufficient notice describing Massachusetts violations before filing this suit. *See above*, ¶¶ 66–73.

### COUNT III
### DECLARATORY JUDGMENT
### (28 U.S.C. § 2201, et seq.)

113.    Plaintiff restates and realleges the allegations in Paragraphs 1 through 112 as if fully rewritten verbatim herein.

114.    For the reasons stated above and herein, VRF is entitled to relief declaring that the Access Ban on its face and as applied to VRF unlawfully restricts the objectives of the NVRA and, as such, is preempted.

115.    For the reasons stated above and herein, VRF is entitled to relief declaring that the Requested Data are "records" which must be made publicly available under the NVRA's Public Disclosure Provision.

116.    In order to prevent further violation of VRF's federal constitutional rights by the Secretary, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring the Access Ban to be preempted by the NVRA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Voter Reference Foundation respectfully prays for judgment in its favor and against Defendant, and that the Court:

a.    Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declare that the Requested Data, including the Registry, are "records" which must be disclosed under the NVRA's Public Disclosure Provision.

b.      Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declare that the Access Ban is preempted by the Public Disclosure Provision of the National Voter Registration Act and is invalid to the extent of that conflict.

c.      Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, permanently enjoin the Defendant, his agents, employees, and all persons acting in active concert or participation with them, from enforcing the Access Ban against Plaintiff, its agents, and others similarly situated, and enjoin the Defendant to produce the Requested Data to Plaintiff.

d.      Pursuant to 52 U.S.C. § 20510(c), and other applicable law, award Plaintiff its costs and expenses incurred in bringing this action, including its attorneys' fees.

e.      Grant all other and further relief that the Court deems equitable, just, and proper.

Dated: October 9, 2024                    Respectfully submitted,

**ASHCROFT LAW FIRM**

/s/ *Michael J. Sullivan*
Michael Sullivan (MA Bar #487210)
J. Christopher Amrhein, Jr. (MA Bar #703170)
200 State Street, 7th Floor
Boston, MA 02109
Tel: (617) 573-9400
msullivan@ashcroftlawfirm.com
camrhein@ashcroftlawfirm.com

**GRAVES GARRETT GREIM LLC**
Edward D. Greim (MO 54034)*
Matthew R. Mueller (MO 70263)*
Jackson C. Tyler (MO 73115)*
*Pro Hac Vice Forthcoming*
1100 Main Street, Suite 2700
Kansas City, Missouri 64105

24

Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com
mmueller@gravesgarrett.com
jtyler@gravesgarrett.com