**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **VOTER REFERENCE FOUNDATION, LLC,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Case No. 24-cv-12592-DJC** |
| ) | |
| **WILLIAM GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, C. J.**                                                                                                **March 26, 2026**

## I.    Introduction

Plaintiff Voter Reference Foundation, LLC ("VRF") has filed this lawsuit against Defendant William Galvin, Secretary of the Commonwealth of Massachusetts (the "Secretary"), alleging that Mass. Gen. L. c. 51, § 47C is preempted by the National Voter Registration Act (the "NVRA") (Count I) and the Secretary violated the NVRA's public disclosure provision (52 U.S.C. § 20507(i)(1)) (Count II) by declining to fulfil VRF's request for voter data, and seeks declaratory judgment on both claims (Count III).  D. 1.  Both parties have moved for summary judgment and the Secretary has moved to dismiss the complaint for lack of standing.  D. 29; D. 31.  For the reasons stated below, the Court ALLOWS VRF's motion for summary judgment and DENIES the Secretary's motion to dismiss and motion for summary judgment.

1

## II.     Standard of Review

### A.     <u>Motion to Dismiss under 12(b)(1)</u>

When confronted with a Rule 12(b)(1) motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." <u>Aversa v. United States</u>, 99 F.3d 1200, 1209-10 (1st Cir. 1996) (citing <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995)).  The Court may widen its gaze, however, and look beyond the pleadings to determine subject matter jurisdiction.  <u>Martínez-Rivera v. Commonwealth of Puerto Rico</u>, 812 F.3d 69, 74 (1st Cir. 2016) (citing cases for the proposition that the court can "rely on facts outside the pleadings" to decide a Rule 12(b)(1) motion).  "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." <u>Murphy</u>, 45 F.3d at 522 (quoting <u>Taber Partners, I v. Merit Builders, Inc.</u>, 987 F.2d 57, 60 (1st Cir. 1993)).  Standing is a jurisdictional issue, <u>see</u> <u>P.R. Tel. Co. v. T-Mobile P.R. LLC</u>, 678 F.3d 49, 57 (1st Cir. 2012), and, accordingly, challenges to standing are properly considered under Rule 12(b)(1).  <u>See</u> <u>Kolancian v. Snowden</u>, 532 F. Supp. 2d 260, 261 (D. Mass. 2008).

### B.     <u>Motion for Summary Judgment</u>

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000) (quoting another source).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000); <u>see</u> <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, <u>Anderson</u>

2

v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

## III.    Factual Background

### A.    National Voter Registration Act ("NVRA")

The NVRA was enacted to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," 52 U.S.C. § 20501(b)(1); to "enhance[] the participation of eligible citizens as voters in elections for Federal office," id. § 20501(b)(2); "to protect the integrity of the electoral process," id. § 20501(b)(3); and "to ensure that accurate and current voter registration rolls are maintained," id. § 20501(b)(4). NVRA's public disclosure provision requires "[e]ach State to maintain for at least 2 years and make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official voter lists of eligible voters." Id. § 20507(i)(1). Pursuant to the NVRA, "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." Id. § 20509. Secretary William Galvin is currently Massachusetts's chief election official. D. 30 ¶ 3; D. 33 at 2 ¶ 3. The NVRA provides a private right of action for any person aggrieved by a violation of the act, requiring the party to provide written notice of the violation to the chief election official of the

State and, if the violation is not corrected within the applicable curing period, allowing the aggrieved person to "bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."  52 U.S.C. § 20510(b).

###### B.        Massachusetts's Voter Registration Information System

After the NVRA was passed, Massachusetts developed the Voter Registration Information System ("VRIS"), a database of registered voters hosted by the Secretary's office, to comply with the NVRA.  D. 33 at 9 ¶ 1; D. 35 ¶ 1.  Mass. Gen. L. c. 51, § 47C, states that, "[s]ubject to appropriation, the state secretary shall maintain a central registry of voters which shall contain, if provided by the registrars, the names, addresses and effective dates of registration of all registered voters in the commonwealth."  The provision contains an "access ban" prohibiting "names and addresses" contained in the VRIS from becoming "a matter of public record."  Id.  However, there are exceptions to this access ban allowing voter names and addresses to be available to "state party committees, statewide candidate committees, state ballot question committees, the jury commissioner, adjutant general and any other individual, agency or entity that the state secretary shall designate by regulation consistent with the purposes of this section."  Id.

VRIS is maintained by the Secretary and updated through voter registration maintenance conducted by local election officials.  D. 30 ¶¶ 10-11; D. 33 at 4-5 ¶¶ 10-11.  Each of Massachusetts's 351 local election officials have access to VRIS and can extract and produce voter data, but only for their respective jurisdiction.  D. 30 ¶¶ 13-14; D. 33 at 5 ¶¶ 13-14.  As local election officials can only produce a voter list for their own jurisdiction, it is undisputed that the Secretary is the only election official in Massachusetts that can make a centralized list of voter data (the "statewide voter list") available in its entirety for all jurisdictions in the Commonwealth. D. 30 ¶ 12; D. 33 at 5 ¶ 12.  The Secretary has made the statewide voter list available to required

entities enumerated under Mass. Gen. L. c. 51, § 47C as well as certain recipients of his choosing, D. 30 ¶¶ 7-8; D. 33 at 3 ¶¶ 7-8, including the Massachusetts Legislature, the Donahue Institute, a professor and the state of Rhode Island, D. 30-4 ¶ 21; D. 30 ¶ 8; D. 33 at 3-4 ¶ 8. Recipients of the statewide voter list are required to sign a licensing agreement that limits the use and distribution of the data. D. 30 ¶ 9; D. 33 at 4 ¶ 9; D. 30-6. The Secretary also maintains a limited amount of cancelled voter data which he does not make available to requestors. D. 30 ¶ 16; D. 33 at 5-6 ¶ 16.

C.    **VRF's June 27, 2024 Data Request**

VRF is an Ohio-based nonprofit organization dedicated to ensuring transparent, accurate and fair elections in the United States. D. 30 ¶ 19; D. 33 at 6 ¶ 19. VRF publishes official state voter lists on its website to provide public access to official government data pertaining to elections, including voter registration rolls and analysis of state voter list maintenance efforts. D. 30 ¶¶ 20-21; D. 33 at 6 ¶¶ 20-21. VRF has voter data for 31 states and the District of Columbia. D. 1 ¶ 57. On June 27, 2024, VRF requested from the Secretary: (1) "[a] current copy of the Massachusetts voter registration data from the central registry of voters" and (2) "[v]oter registration data for all voters removed or canceled from any voter list (e.g. active list, inactive list, suspended list, purged list, deleted list, etc.) between November 8, 2022, and present date, along with voting history/credit data for each voter that voted in the November 8, 2022, general election, including the method of voting (election day polling place, absentee early, etc.), and the voting jurisdiction the vote occurred in." D. 1-1 at 3; D. 30 ¶ 24; D. 33 at 7 ¶ 24. The parties agree that the statewide voter list, which includes the requested voter history data, must be made available under the NVRA. D. 30 ¶ 6; D. 33 at 3 ¶ 6.

On July 12, 2024, the Secretary's Elections Division responded to VRF's request, stating: "[t]he information that [VRF] requested . . . contains the names and addresses of registered voters in Massachusetts" and "[u]nder section 47C of chapter 51 of the Massachusetts General Laws, such information contained in the state voter database is not a public record available from this office," and thus "under Exemption (a) of the Public Records Law, this office is unable to provide you with the records you have requested." D. 1-2 at 2; D. 30 ¶ 26; D. 33 at 8 ¶ 26. The response also noted that "the records [VRF] requested are available for public disclosure and copying from the local election officials who have custody of those voter records and who maintain the voter lists," D. 1-2 at 2; D. 30 ¶ 27; D. 33 at 8 ¶ 27, and suggested that VRF "submit[] [its] request directly to local election officials in Massachusetts," D. 1-2 at 2.

On August 19, 2024, VRF sent a Notice of Violation of the NVRA to the Secretary. D. 30 ¶ 29; D. 33 at 8 ¶ 29; D. 1-3. The notice claimed that the Secretary had violated NVRA's public disclosure provision by denying VRF's record request, including for "a current copy" of the VRIS voter registration data "compiled pursuant to Mass. Ann. Laws ch. 51, § 47C." D. 1-3 at 3; D. 30 ¶ 30; D. 33 at 8 ¶ 30. Additionally, the notice claimed that Massachusetts's prohibition on sharing the names and addresses of voters, except for select entities, was preempted by NVRA's public disclosure provision. D. 30 ¶¶ 30-31; D. 33 at 8-9 ¶¶ 30-31; D. 1-3 at 3-4. VRF requested that Massachusetts correct each of the alleged violations by making the requested records available to VRF within twenty days, in accordance with 52 U.S.C. § 20510(b)(2), and informed the Secretary that it would seek legal recourse if he failed to do so. D. 1-3 at 3-4; D. 30 ¶ 32; D. 33 at 9 ¶ 32. The Secretary never responded to the notice, D. 30 ¶ 33; D. 33 at 9 ¶ 33, nor to VRF's second notice on September 10, 2024, D. 1 ¶ 76-78; see D. 1-4 at 2.

IV.    **Procedural History**

VRF filed this lawsuit shortly thereafter, on October 9, 2024, under NVRA's private right of action provision.  D. 1; see 52 U.S.C. § 20510(b).  Both parties now move for summary judgment, D. 29; D. 31, and the Secretary also moves to dismiss, D. 31.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 41.

V.    **Analysis**

A.    **Standing**

The Secretary moves to dismiss the complaint on the ground that VRF lacks Article III standing.  D. 32 at 7-13.  To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).  In determining whether a plaintiff has met this burden, a court "takes all well-pleaded facts in the complaint as true and indulge[s] all reasonable inferences in [plaintiff's] favor." Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 46-47 (1st Cir. 2020) (internal quotation marks omitted).  "If the plaintiff does not claim to have suffered an injury . . . there is no case or controversy for the federal court to resolve." TransUnion, 594 U.S. at 423 (quotation omitted).

VRF alleges that Mass. Gen. L. c. 51, § 47C's access ban and its corresponding licensing agreement are preempted by the NVRA, D. 1 ¶¶ 80-100; D. 30 at 22-23, and that the Secretary violated NVRA's public disclosure provision by failing to provide VRF with its requested voter data, D. 1 ¶¶ 101-12.  VRF brings these claims under NVRA's private right of action provision, id. at ¶¶ 99, 111; see 52 U.S.C. § 20510(b), and seeks declaratory judgment on both claims under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, D. 1 ¶¶ 113-16.  The Secretary contends that VRF has

7

failed to allege a concrete injury to support its NVRA preemption and access ban claims. D. 32 at 6-12. "'To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Pub. Int. Legal Found., Inc. v. Bellows, 92 F.4th 36, 50 (1st Cir. 2024) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). An injury is imminent "'if it is certainly impending or if there is a substantial risk that harm will occur.'" Id. (emphasis in original) (quoting Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (internal citations omitted)).

The Secretary's standing argument raises the issue of what standard applies for establishing a standing-conferring informational injury under NVRA's public disclosure provision post-TransUnion. See D. 32 at 7-13. Historically, "the Supreme Court has repeatedly said that denial of information to which plaintiffs have a legal right can be a concrete injury in fact." Laufer v. Acheson Hotels, LLC, 50 F.4th 259, 269 (1st Cir. 2022) (citing Fed. Election Comm'n v. Akins, 524 U.S. 11, 20-21 (1998); Public Citizen v. U.S. Dep't of Just., 491 U.S. 440, 449-50 (1989); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-74 (1982); Spokeo, Inc., 578 U.S. at 342 (noting that "[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" (citing Akins, 524 U.S. at 20-25; Public Citizen, 491 U.S. at 449) (emphasis in original)), vacated and remanded, 601 U.S. 1 (2023). "In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Spokeo, Inc., 578 U.S. at 342 (emphasis in original). The Supreme Court's TransUnion decision in 2021, however, "muddied the waters." Baker v. CVS Health Corp., 717 F. Supp. 3d 188, 192 (D. Mass. 2024). In TransUnion, the named plaintiff sued a credit-reporting agency under the Fair Credit Reporting Act for violating the statute's provision requiring consumer

8

reporting agencies to "'disclose to the consumer '[a]ll information in the consumer's file at the time of the request'" and "'provide to a consumer, with each written disclosure by the agency to the consumer,'" a "summary of rights" prepared by the Consumer Financial Protection Bureau, 594 U.S. at 418-19 (citing 15 U.S.C. § 1681g(a)(1); § 1681g(c)(2)), due to the agency's failure to provide the summary of rights with the requested written disclosure simultaneously, id. at 421. The Court held that because the plaintiffs "did not allege that they failed to receive any required information" but instead "argued only that they received it in the wrong format . . . Akins and Public Citizen do not control." Id. at 441 (emphasis in original). Additionally, the Court noted that, "[m]oreover, the plaintiffs have identified no 'downstream consequences' from failing to receive the required information," id. at 442, and thus, the plaintiffs failed to establish standing through their alleged informational injury, Baker, 717 F. Supp. 3d at 192.

Since TransUnion, Circuits have been split over whether to apply a heightened standard for informational injuries. Some Circuits have held that a plaintiff claiming an informational injury "must show '(1) the denial of information and (2) some consequence caused by that omission' that has 'some relevance' to an interest that the statute was intended to protect." Id. (quoting Kelly v. RealPage Inc., 47 F.4th 202, 213 (3d Cir. 2022); Laufer v. Looper, 22 F.4th 871, 881 & n.6 (10th Cir. 2022); Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022)); see, e.g., Pub. Int. Legal Found. v. Benson, 136 F.4th 613, 630 (6th Cir. 2025); Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania, 136 F.4th 456, 464 (3d Cir. 2025); Campaign Legal Ctr. v. Scott, 49 F.4th 931, 936-37 (5th Cir. 2022). Other circuits have applied TransUnion's "downstream consequences" analysis to claims where the required information was received in the wrong format, Baker, 717 F. Supp. 3d at 192 (citing Laufer v. Naranda Hotels, LLC, 60 F.4th 156, 170 (4th Cir. 2023)), while applying historical informational injury analysis to claims where required

information was denied, see, e.g., Laufer, 60 F.4th at 163 (applying Havens Realty, Public Citizen and Akins to claim that plaintiff was denied required information under the ADA).  For its part, the First Circuit has noted, in a decision since vacated as moot,[1] that "TransUnion's downstream-consequences-needed-for-informational-injury proviso certainly looks like dictum given that the Court concluded the plaintiffs didn't allege they hadn't received any required information." Laufer 50 F.4th at 271 n.4; see Laufer, 60 F.4th at 170-71 (concluding that "TransUnion most assuredly did not overrule Havens Realty, Public Citizen, and Akins"); Laufer v. Arpan LLC, 29 F.4th 1268, 1282 (11th Cir. 2022) (Jordan, J., concurring) (noting that Havens Realty is "still on the books"), vacated, 77 F.4th 1366 (11th Cir. 2023).

The Secretary argues that VRF's alleged injury resembles TransUnion's "wrong format" injury, D. 32 at 11, and urges the Court to follow the heightened standard adopted by the Third, Sixth, and Fifth Circuit in analyzing whether a plaintiff has standing to sue for an alleged violation of NVRA's public disclosure provision, id. at 8-9 (citing Benson, 136 F.4th at 630; Pub. Int. Legal Found., 136 F.4th at 464; Campaign Legal Ctr., 49 F.4th at 936-37).  Under this standard, the Secretary contends that VRF fails to plead an injury because VRF is an "out-of-state" public interest organization which does not participate directly in the electoral process, id. at 12, and the potential harms VRF identifies are speculative, id. at 13.  In response, VRF argues that TransUnion did not alter the standing burden for alleged violations of public disclosure laws but, even if it did, the heightened standard does not apply here as VRF claims are information denial claims and VRF

_____

[1] In Laufer v. Acheson Hotels, the Supreme Court granted certiorari on the First Circuit's decision to "resolve the split" around standing for informational injuries, Laufer, 601 U.S. at 3, however, due to the plaintiff's subsequent, voluntary dismissal of her pending suits, the Supreme Court remanded the case to the First Circuit with instructions to dismiss it on mootness grounds, id. at 5.

has pleaded an injury under either standard.  D. 34 at 8-11, 15-18.  Additionally, VRF claims that the Third, Fifth and Sixth Circuit decisions are erroneous.  Id. at 11-15.

Under either standard, VRF has sufficiently alleged standing.  VRF alleges that it was denied voter roll data under NVRA's public disclosure provision, not that any data was given in the wrong format.  D. 1 ¶ 78; D. 34 at 10.  It is undisputed that VRF requested voter data from the Secretary, D. 30 ¶ 24; D. 33 at 7 ¶ 24, and the Secretary never produced it to VRF, D. 30 ¶ 34; D. 33 at 9 ¶ 34, nor responded to VRF's two notices alleging that he violated NVRA's public disclosure provision by failing to do so, D. 1 ¶¶ 74-78; D. 26 ¶¶ 74-78; D. 30 ¶ 33; D. 33 at 9 ¶ 33. Moreover, the parties' dispute over whether the Secretary made the requested data available by suggesting VRF can access the data via local election officials is "an ultimate merits question," not a question of standing.  Jud. Watch, Inc. v. Illinois State Bd. of Elections, No. 24-cv-1867, 2024 WL 4721512, at *8 (N.D. Ill. Oct. 28, 2024) (collecting cases noting same).  At the Rule 12(b)(1) motion to dismiss stage, the Court must accept VRF's well-plead allegations on this point as true.  Aversa, 99 F.3d at 1209-10.  As such, VRF's claims are information denial claims. Assuming, without deciding, that the historical informational injury standard applies to these claims, the alleged denial of information to which VRF was entitled is sufficient to establish an injury in fact.  Akins, 524 U.S. at 20-21; Public Citizen, 491 U.S. at 449-50; Spokeo, Inc., 578 U.S. at 342; Laufer, 60 F.4th at 170-72.

But even if the heightened standard applies, VRF has alleged adverse effects related to the purpose of the NVRA from the denial of its requested data.  The four stated purposes of the NVRA are to "increase the number of eligible citizens who register to vote in elections for Federal office;" "enhance [] the participation of eligible citizens as voters in elections for Federal office;" "protect the integrity of the electoral process;" and "ensure that accurate and current voter registration rolls

are maintained." Bellows, 92 F.4th at 41 (quoting 52 U.S.C. § 20501(b)(1)-(4)) (internal quotations omitted). NVRA's public disclosure provision requires States to "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Making "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," id., which includes VRF's requested voter data, see Bellows, 92 F.4th at 47-49, available under the public disclosure provision, is clearly related to at least one of the statute's purposes, 52 U.S.C. § 20501(b)(4); Bellows, 92 F.4th at 54-55 (citing Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331, 339 (4th Cir. 2012) (noting that "[i]t is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls"). This is true even though the NVRA is not primarily a public-disclosure law. See Akins, 524 U.S. at 21 (holding that plaintiffs alleged an injury in fact under the Federal Election Campaign Act's disclosure provision based on "their inability to obtain information . . . that . . . on respondents' view of the law, the statute require[d] . . . [be made] public"). "[A]s in Public Citizen and Akins, the NVRA provides a public right to information," the denial of which undermines the purpose of the statute. Project Vote/Voting For Am., Inc. v. Long, 752 F. Supp. 2d 697, 703 (E.D. Va. 2010). Thus, VRF has alleged an injury related to the purpose of the NVRA.

VRF also alleges a range of adverse effects from the alleged denial of its requested data that are also relevant to NVRA's purpose of "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4). These include the inability to "shar[e] the data online so interested citizens, including Massachusetts voters, can review the data and help identify and report inaccuracies or inconsistencies," D. 34 at 16, the inability to conduct comparative

analysis on voting history, id. at 17; Akins, 524 U.S. at 21 (holding that injury in fact consisted of denial of required election information for which "[t]here is no reason to doubt [plaintiffs'] claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office"); cf. Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 338 (7th Cir. 2019) (holding no injury in fact over denial of required information that plaintiff did not seek and for which "[plaintiff] did not allege she would have used the information at all"), the inability to access statewide data produced at the same point in time, and "exponentially" increased expenses associated with collecting local voter lists from 351 local officials, id. at 17-18 (citing Massachusetts v. United States Dep't of Health & Hum. Servs., 923 F.3d 209, 222 (1st Cir. 2019) (noting that "[i]t is a bedrock proposition that 'a relatively small economic loss—even an identifiable trifle—is enough to confer standing'" (citation omitted)). These adverse effects are not speculative but informed by the undisputed record here. D. 34 at 16-18 (citing the statement of undisputed facts).

The Secretary's contention that VRF cannot bring a cause of action under the NVRA because it is an "out-of-state" public interest organization which does not participate directly in the electoral process, D. 32 at 8-12 (citing Benson, 136 F.4th at 613; Pub. Int. Legal Found., 136 F.4th at 456; Campaign Legal Ctr., 49 F.4th at 931), is unsupported by the statute's text, 52 U.S.C. § 20507(i); id. § 20510(b), First Circuit law, see Bellows, 92 F.4th at 50-51 (holding that Public Interest Legal Foundation, Inc. ("PILF"), a Virginia-based nonprofit organization, had standing to challenge Maine's voter data laws under NVRA and analyzing PILF's public disclosure provision claim against Maine's voter registration laws), or the cases across the nation that have entertained NVRA violation claims from out-of-state organizations, see, e.g., Pub. Int. Legal Found., Inc. v. Knapp, 749 F. Supp. 3d 563, 565 (D.S.C. 2024); Voter Reference Found., LLC v.

Torrez, 727 F. Supp. 3d 1014, 1033 (D.N.M. 2024), aff'd, 160 F.4th 1068 (10th Cir. 2025); Project

Vote/Voting for Am., Inc., 682 F.3d at 333; Pub. Int. Legal Found., Inc. v. Matthews, 589 F. Supp.

3d 932, 935 (C.D. Ill. 2022).

For the aforementioned reasons, VRF has Article III standing to sue under the NVRA.

### A.    Count I:  Massachusetts's Access Ban - Preemption by the NVRA

As to Count I, VRF moves for summary judgment on the claim that Mass. Gen. L. c. 51, §

47C's access ban is preempted by NVRA's public disclosure provision.  D. 1 ¶¶ 80-100.  VRF

also moves for summary judgment on the claim that the NVRA preempts the use and publication

restrictions under the Secretary's licensing agreement.  D. 30 at 22-23.[2]  The Secretary cross-

moves for summary judgment on the ground that the law does not preclude disclosure of VRIS

voter data because VRF has access to the statewide voter list through 351 local election officials

who can each access and produce VRIS voter data for their respective local jurisdiction.  D. 32 at

19-20.

Pursuant to Article VI of the United States Constitution, Congress can preempt state law

so that it is "without effect."  Maryland v. Louisiana, 451 U.S. 725, 746 (1981) (citing McCulloch

v. Maryland, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819)).  The "purpose of Congress is the

ultimate touchstone of pre-emption analysis."  Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516

(1992) (internal quotation marks and citation omitted).  Congress's purpose can be "explicitly

---

[2]Although the preemption challenge to the licensing agreement was raised for the first time at the summary judgement stage, the agreement is directly related to the Massachusetts law challenged in VRF's complaint.  D. 30 ¶ 9; D. 33 at 4 ¶ 9.  The Secretary also had a "fair opportunity to defend" against the licensing agreement claim and "present[] additional evidence" in his cross-motion for summary judgment and motion to dismiss, see D. 32 at 4, and does not contend that the claim is improperly raised.  See Katz v. Belveron Real Est. Partners, LLC, 28 F.4th 300, 309 (1st Cir. 2022).

stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977).

Alternatively, preemption may be implied.  Implied preemption manifests as either conflict preemption or field preemption.  A state law is preempted under conflict preemption when it either makes "compliance with both federal and state regulations [] a physical impossibility," Arizona v. United States, 567 U.S. 387, 399 (2012) (quoting Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963)), or "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).  A state law is preempted under field preemption when Congress has "occupied the field" by creating "a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it'" or "where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1990)) (alterations in original).

It is undisputed that the voter information contained in VRIS must be made available pursuant to NVRA's public disclosure provision.  D. 30 ¶ 6; D. 33 at 3 ¶ 6.  Thus, the question before the Court is whether Mass. Gen. L. c. 51, § 47C's mandate that names and addresses contained in the VRIS "shall not be a matter of public record" is preempted.[3]  The First Circuit's decision in Bellows is instructive.  In Bellows, PILF requested from Maine's Secretary of State a Voter File containing statewide voter data generated from Maine's Central Voter Registration

---

[3] The Secretary's argument that Comm. for Mass. Voter Identification Ballot Question v. Galvin, 790 F. Supp. 3d 1 (D. Mass. 2025), appeal docketed, No. 25-cv-1696 (1st Cir. July 29, 2025), forecloses VRF's preemption claim, see D. 39 at 2, is erroneous as that case explicitly did not decide the question of whether the NVRA preempts Mass. Gen. L. c. 51, § 47C.  Comm. for Mass. Voter Identification Ballot Question, 790 F. Supp. 3d at 7.

system ("CVR"), "a statewide electronic system designed to standardize and centralize Maine voter registrations" created pursuant to the Help America Vote Act ("HAVA") and Maine law, under NVRA's public disclosure provision.  Bellows, 92 F.4th at 42-43.  Maine restricted access to CVR's Voter File under a privacy law which made the information available "only by municipal and state election officials for the purposes of election and voter registration administration," id. at 42 (quotation omitted), with "only nine exceptions under which certain CVR data, including the Voter File, could be disclosed to specified entities for specified purposes," id. at 43.  One of the exceptions, "Exception J,"[4] provided that "'[a]n individual or organization that is evaluating the State's compliance with its voter list maintenance obligations may[ ] . . . purchase . . . the [Voter File] from the [CVR] by making a request to the Secretary of State.'"  Id. (quotation omitted). However, entities who received the statewide voter data under Exception J were subject to a use and publication ban.  Id.  at 43-44.  Under the use ban, entities were prohibited from using the voter data "for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations."  Id. at 43.  Under the publication ban, entities were prohibited from making information about a specific voter "including but not limited to a voter's name, residence address or street address [] accessible by the general public on the Internet or through other means."  Id. at 44.  PILF sued Maine's Secretary of State alleging that the NVRA preempted the use and publication bans.  Id.  The First Circuit held that both restrictions were preempted by the NVRA.  Id. at 54, 56.  In its use ban holding, the court concluded that as the "NVRA seeks 'to

---

[4] At the time PILF filed its original complaint, PILF did not fall under any of the exceptions to Maine's access ban under the Privacy Law and PILF sued Maine's Secretary alleging that the access ban violated the NVRA's public disclosure provision.  Bellows, 92 F.4th at 43.  However, while the original suit was pending, Maine amended its Privacy Law to include Exception J, under which PILF qualified and could access the statewide voter file, thus the district court dismissed the access ban challenge as moot.  Id. at 43-44.

protect the integrity of the electoral process; and . . . to ensure that accurate and current voter registration rolls are maintained,'" id. at 54 (quoting 52 U.S.C. § 20501(b)(3)-(4)), "the Use Ban 'stands as an obstacle to the accomplishment and execution' of these purposes." Id. (quoting Arizona, 567 U.S. at 399). The court likewise concluded that the publication ban was preempted by the NVRA as "[52 U.S.C. § 20507(i)(1)] requires the public release of the Voter File by mandating 'all records concerning the implementation of' Maine's voter list registration and maintenance activities to be 'ma[d]e available for public inspection . . . evinc[ing] Congress's belief that public inspection, and thus public release, of Voter File data is necessary to accomplish the objectives behind the NVRA." Id. (emphasis in original) (quoting 52 U.S.C. § 20507(i)(1)).

Just like Maine's CVR, Massachusetts created the VRIS pursuant to the NVRA, D. 33 at 9 ¶ 1; D. 35 ¶ 1, and maintains the VRIS to comply with HAVA's requirement of a statewide database of registered voters, D. 33 at 11 ¶ 6; D. 35 ¶ 6, and Massachusetts law requiring the Secretary of State to "maintain a central registry of voters," Mass. Gen. L. c. 51, § 47C. These voter registration and maintenance activities "[b]y their very nature . . . fall within Section [52 U.S.C. § 20507(i)(1)]." Bellows, 92 F.4th at 46. Likewise, just like Maine's Voter File, the statewide voter list is an electronic report generated from the VRIS, the database through which Massachusetts carries out its voter list registration and maintenance activities, captures voter record and voter participation history information from the VRIS on eligible Massachusetts voters as of the date the statewide voter list is generated, and reflects the additions and changes made by Massachusetts election officials in the VRIS pursuant to federal and state law as part of Massachusetts's voter list registration and maintenance activities. See id. at 47; D. 30 ¶¶ 5-6; D. 33 at 3 ¶¶ 5-6. Massachusetts's statewide voter list "plainly relates to the carrying out of [Massachusetts]'s voter list registration and maintenance activities and is thereby subject to

disclosure under [52 U.S.C. § 20507(i)(1)]." Bellows, 92 F.4th at 47. It is unquestionable that Mass. Gen. L. c. 51, § 47C's declaration that VRIS data "shall not be a matter of public record," id., makes "compliance with both federal law and state regulations" impossible, Florida Lime & Avocado Growers, Inc., 373 U.S. at 142-143, and "stands as an obstacle to the accomplishment and execution of" the NVRA, Hines, 312 U.S. at 67; Bellows, 92 F. 4th at 54.

Thus, the NVRA preempts Mass. Gen. L. c. 51, § 47C's access ban. See D. 30 at 14-16. While courts have recognized that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information" contained in statewide registries, Bellows, 92 F.4th at 56 (collecting cases), voter names and addresses are not among them, id. at 48 (noting that "[t]he records maintained pursuant to [the public disclosure provision] shall include lists of the names and addresses") (alteration and emphasis in original)). As for the licensing agreement, the First Circuit also made clear that restrictions to publicly releasing records under the NVRA are "'[in]consistent with the structure and purpose of the [NVRA] as a whole.'" Bellows, 92 F.4th at 54 (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992) (alternation in original)). The publication ban under the licensing agreement falls into this rule and thus, it too is preempted by the NVRA. Id.; Matthews, 589 F. Supp. 3d at 943; see Voter Reference Found., LLC v. Torrez, 160 F.4th 1068, 1081-84 (10th Cir. 2025) (concluding that New Mexico's voter data use restrictions and data sharing ban are preempted by the NVRA).

The Secretary's attempt to distinguish the access ban under Massachusetts's law from the use and publication bans under Maine's law, D. 32 at 21, fails. While Maine's law "limited the use and publication of voter data," id.; see Bellows, 92 F.4th at 49, Massachusetts's law arguably goes further by prohibiting access to records within the meaning of the NVRA. See Mass. Gen. L. c. 51, § 47C (providing that the "names and addresses contained in said central registry shall

18

not be a matter of public record"). This prohibition not only "'stands as an obstacle" to NVRA's purposes, Bellows, 92 F. 4th at 54 (internal quotations omitted), but conflicts with the core aim of the public disclosure provision, 52 U.S.C. § 20507(i)(1). Contrary to the Secretary's suggestion, there is no further foundation for his position in Matthews as that case supports the conclusion that the NVRA preempts the access and publication bans under Mass. Gen. L. c. 51, § 47C. In Matthews, when faced with a similar state law prohibiting access to a full statewide voter registration list save for certain political committees, Matthews, 589 F. Supp. 3d at 936, the court found that the state law was preempted by the NVRA because it conflicts with the public disclosure provision's mandate to make all records, "including the statewide voter registration list at issue," publicly available for inspection and photocopying, id. at 943. Mass. Gen. L. c. 51, § 47C suffers the same flaw.

Accordingly, the Court concludes that the NVRA preempts the access ban under Mass. Gen. L. c. 51, § 47C and the publication ban under the Secretary's licensing agreement. VRF is entitled to summary judgment on Count I.

**B.     Count II:  Violation of NVRA's Public Disclosure Provision**

As to Count II, VRF moves for summary judgment on the claim that the Secretary violated NVRA's public disclosure provision by refusing to fulfill VRF's request for voter data. D. 1 ¶¶ 101-12. The Secretary cross-moves for summary judgment on the grounds that: (1) Massachusetts complies with the public disclosure provision by making the VRIS voter information available through local election officials; (2) the NVRA does not require that the Secretary himself provide voter data to VRF; and (3) the NVRA does not dictate that Massachusetts provide voter registration information in a single statewide list. D. 32 at 12-19.

19

After the parties filed their summary judgment motions, another session of this Court addressed the issues of whether "the word 'State' under § 20507(i) specifically obligates [the Secretary], as chief State election official, to provide . . . records," and whether Massachusetts's system of delegating "the disclosure of voter registration lists to local entities, is . . . contrary to requirements of the NVRA." Comm. for Mass. Voter Identification Ballot Question, 790 F. Supp. 3d at 4-5. In that case, a political committee requested VRIS records from the Secretary who denied the request and informed the committee that "it could obtain the records from local election officials but not on a statewide basis." Id. at 3. The committee sued the Secretary alleging that he violated NVRA's public disclosure provision for failing to provide it with the requested records. Id. Both parties moved for summary judgment, for which "their contrary interpretations of the word 'State' under the NVRA's requirement that 'each State' must make its records 'available for public inspection'" was dispositive to the court. Id. at 4 (citing 52 U.S.C. § 20507(i)). The court found that "the duty to disclose voter registration records plaintiff seeks under the NVRA is imposed upon the State as a whole, not [the Secretary]," id. at 4, and "delegation of registration recordkeeping to Massachusetts municipalities is not inconsistent with the NVRA, and therefore, plaintiff's [delegation] challenge is unavailing" id. at 7. For those reasons, the court dismissed the committee's claim under the public disclosure provision.

The Court is not persuaded by the Secretary's suggestion that Comm. for Mass. Voter Identification Ballot Question forecloses VRF's claim under the public disclosure provision, see D. 39 at 1-2, because of the distinct legal questions and factual record before this session of the Court. Specifically, that case did not address a core argument underlying VRF's claim here: that the full statewide voter list is in and of itself a record within the meaning of the NVRA, D. 1 ¶¶ 36-44; D. 30 at 17-18, and it cannot be obtained from local election officials, D. 30 ¶ 12; D. 33 at

20

5 ¶ 12. As such, while Comm. for Mass. Voter Identification Ballot Question provides guidance on which state entities may disclose records to comply with the NVRA, it did not address the question of whether Massachusetts is obligated to disclose the full statewide voter list as a record in and of itself and, if so, whether Massachusetts's purported delegation system complies with that obligation. D. 40 at 1-2. It is undisputed here that the statewide voter list is a record within the meaning of NVRA, D. 30 ¶ 6; D. 33 at 3 ¶ 6, and that the Secretary is the only election official in Massachusetts who can make the full list available, D. 30 ¶ 12; D. 33 at 5 ¶ 12. Thus, the questions before this Court are whether Massachusetts can decline to make the statewide voter list record in its possession available and if it can avoid such obligation and direct the VRF to 351 local officials. Given the distinct legal questions and factual record here, the Court answers both questions in the negative.

Bellows makes clear that the full statewide voter list is a "record" within the meaning of NVRA's public disclosure provision. In assessing the parties' cross-motions for summary judgment, the First Circuit confronted the identical question of "whether the Voter File is a 'record[]' under [NVRA's] statutory text," Bellows, 92 F.4th at 45, and held that it was, id. at 49 (concluding that "Maine's Voter File is a 'record [] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters' and is thus subject to disclosure under [52 U.S.C. § 20507(i)(1)]"). Importantly, Bellows recognized "the sweeping language that Congress adopted," in promulgating the public disclosure provision "which makes 'all records concerning the implementation of [a State]'s voter list registration and maintenance activities subject to disclosure." Id. at 48 (emphasis in original) (citing 52 U.S.C. § 20507(i)(1)). In doing so, the First Circuit explicitly rejected a "narrow construction" of the coverage of NVRA's public disclosure provision. Id. As the First Circuit

21

explained, "the word 'all' reflects a 'broadly inclusive intent,' giving [52 U.S.C. § 20507(i)(1)] an expansive meaning." Id. (citing United States v. Dion, 37 F.4th 31, 35 (1st Cir. 2022), cert. denied, ___ U.S. ___, 143 S. Ct. 387 (2022); Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 290 (4th Cir. 1998)).

Here, "all records" necessarily includes the full statewide voter list. See id. at 48-49. That statewide voter lists are records under the NVRA has been consistently recognized by other courts. See, e.g., Torrez, 727 F. Supp. 3d at 1213-14 (collecting cases); Matthews, 589 F. Supp. 3d at 942 (collecting cases); Knapp, 749 F. Supp. 3d at 569 (noting that the "weight of authority surrounding the NVRA supports [the] conclusion" that voter data in a state's computerized voter registration database are "records" under the NVRA). Thus, the Secretary's argument that he need not disclose the statewide voter list because VRF can access the same information by reaching out to 351 local election officials fails for the simple reason that it "adds limitations to [the statute] where Congress did not" by "overlook[ing] the sweeping language that Congress adopted, which makes 'all records concerning the implementation of' [Massachusetts]'s voter list registration and maintenance activities subject to disclosure." Bellows, 92 F.4th at 48 (emphasis in original) (quoting 52 U.S.C. § 20507(i)(1)). Providing access to 351 local voter lists, even if, arguendo, taken together they provide the same information contained in the statewide voter list, does not relieve Massachusetts of its obligation to produce the full statewide voter list as a record in and of itself. Jud. Watch, Inc. v. Lamone, 399 F. Supp. 3d 425, 440-41 (D. Md. 2019) (noting that "[a]lthough both scenarios seek the same information," "requiring [plaintiff] to make thousands of separate requests," in lieu of "a single request for a voter list containing and compiling the same information about the thousands of voters in Montgomery County" would amount to "purposeless obstruction" of the NVRA's public disclosure provision that "[n]either the NVRA, the Court, nor common sense can

22

abide"); <u>Matthews</u>, 589 F. Supp. 3d at 941 (noting that "any record, be it data regarding maintenance activities, the processes involved in the maintenance activities, or the output of those maintenance activities, including the statewide voter registration list, must be made available to the public.  Indeed, it would not make sense if the list, as the result of the maintenance activities, could not be viewed if the purpose of viewing the activities is to ensure the output is correct").

That the statewide voter list is a record that must be disclosed under the NVRA is further underscored by the fact that the Secretary makes it available to certain political entities and recipients of his choosing.  D. 30 ¶¶ 7-8; D. 33 at 3-4 ¶¶ 7-8; <u>see</u> Mass. Gen. L. c. 51, § 47C; <u>see also</u> <u>Matthews</u>, 589 F. Supp. 3d at 942 (noting that because state law makes restricted statewide voter registration list available to certain entities, "[b]y the [state]'s own terms, then, the interest in protecting citizens' privacy is not infringed when the list is made available for viewing").  This is particularly true given that the Secretary has produced the statewide voter list to entities unenumerated by Massachusetts's law without promulgating a regulation in accordance with the law's mandate.  D. 30 ¶ 8; D. 33 at 4 ¶ 8; Mass. Gen. L. 51, § 47C (requiring the Secretary to "designate by regulation consistent with the purposes of this section" any unenumerated entity to whom he gives access to VRIS data).  By producing the statewide voter list to certain entities and withholding it from others, Massachusetts produces and maintains, but selectively discloses, a record under the NVRA.  The NVRA does not allow states to pick and choose to whom they owe disclosure compliance.  <u>Matthews</u>, 589 F. Supp. 3d at 943 (concluding that "refusal to make the statewide voter registration list available for viewing by individuals the same way the list is available to political parties is a violation of . . . the Public Disclosure Provision").  This selective disclosure itself is preempted by the NVRA.  <u>Id.</u>  The full statewide voter list is a record that must be made available under the NVRA.

As the Court has ruled that the statewide voter list is a record under the NVRA, the inquiry turns to whether Massachusetts effectively made that statewide voter list available for public inspection by purportedly delegating disclosure of local voter lists to 351 local election officials. The Court concludes it has not.  It is undisputed here that local officials cannot produce the statewide voter list in its entirety.  D. 30 ¶ 12; D. 33 at 5 ¶ 12.  While local officials can pull data from VRIS, extracts from VRIS "only reflect the state of the data as the date and time on which the extract was processed," D. 30-5 ¶¶ 16-17; D. 30 ¶ 15; D. 33 at 5 ¶ 15, and "VRIS cannot recreate a list of registered voters as it existed at a single point in time in the past." D. 30 ¶ 15; D. 33 at 5 ¶ 15; see D. 30-5 ¶¶ 16-17.  These facts make it practically impossible for VRF to receive the same information contained in a full statewide voter list by collecting 351 local lists.  That is even assuming that all 351 local election officials would respond to VRF's request in a timely manner, a proposition that seems suspect at best, D. 30 at 16-17, 21-22, as addressed below. Additionally, requiring VRF to obtain 351 local lists that are each subject to various local fees, D. 30 ¶ 18; D. 33 at 6 ¶ 18, 10 ¶ 2 (noting that Massachusetts law permits localities to charge fees for fulfilling record requests), in lieu of the Secretary producing the statewide list for free, D. 30 ¶ 17; D. 33 at 6 ¶ 17, appears to neither comply with nor be authorized by the public disclosure provision's mandates that records be made available for public inspection and for "photocopying at a reasonable cost," 52 U.S.C. § 20507(i)(1); see Project Vote, Inc. v. Kemp, 208 F. Supp. 3d 1320, 1351 (N.D. Ga. 2016) (noting that "[t]he absence of a cost provision in the public inspection provision of the NVRA—and its inclusion in other record disclosure laws—suggests Congress intended States to shoulder the [cost] burden"); Greater Birmingham Ministries v. Sec'y of State for Alabama, 105 F.4th 1324, 1345 (11th Cir. 2024) (Abudu, J. concurring) (noting that "the plain

meaning of Section 20507(i), [] allows for "photocopying at a reasonable cost," but does not similarly designate that costs may be assessed for public inspection").

The Secretary's argument that providing access to 351 local lists in lieu of a full statewide voter list is a matter of "format" also fails, as his reliance on Greater Birmingham Ministries is misplaced.  D. 32 at 19-20.  In that case, the court found that the plaintiff's requested records were made available both for in-person viewing and by electronic purchase.  Greater Birmingham Ministries, 105 F.4th at 1335; see TransUnion, 594 U.S. at 441 (noting that plaintiffs had received all statutorily required information but "in the wrong format").  Here, the full statewide voter list was never made available to VRF in any format.  See Matthews, 589 F. Supp. 3d at 943.  This is not a matter of VRF "receiv[ing] [the records] in any manner they choose," Greater Birmingham Ministries, 105 F.4th at 1332, but rather a matter of denial of records altogether in response to VRF's request.

Moreover, the Court questions whether Massachusetts has delegated its obligations under NVRA's public disclosure provision to local officials.  The cases relied upon by Comm. for Massachusetts Voter Identification Ballot Question, 790 F. Supp. 3d at 5-6, in finding that delegation of NVRA obligations is not inconsistent with the NVRA all "involv[e] a state that delegated its recordkeeping responsibilities under the NVRA to local entities," id., through specific state regulations, see, e.g., Bellitto v. Snipes, 935 F.3d 1192, 1195-96 (11th Cir. 2019) (noting that "Florida law delegates primary authority for voter registration list maintenance to the county-level supervisors of elections" under Fla. Stat. § 98.015 which mandates that "[e]ach supervisor shall ensure that all voter registration and list maintenance procedures conducted by such supervisor are in compliance with any applicable requirements . . . prescribed by . . . the National Voter Registration Act of 1993"); Voter Intergrity Project NC, Inc. v. Wake Cnty. Bd. of Elections, 301

25

F. Supp. 3d 612, 615-16 (E.D.N.C. 2017) (noting that "North Carolina law [] designates local county boards of elections as the entities directly responsible for performing list maintenance in accordance with" the state's program to comply with NVRA's list maintenance requirement under N. C. Gen. Stat. § 163-82.14(a)); see also True the Vote v. Hosemann, 43 F. Supp. 3d 693, 709-10 (S.D. Miss. 2014) (discussing Mississippi's voter registration system under which "Mississippi law contemplate[s] that voter registration activities will be conducted at the State and local (*e.g.,* County) level").

Here, the Secretary fails to identify a state regulation delegating its obligations under NVRA's public disclosure provision to local election officials.[5]  Although the Secretary cites several state laws under Mass. Gen. L. c. 51 related to the delegation of recordkeeping requirements to local election officials, D. 33 at 12-13 ¶ 7, he does not do so for NVRA's public disclosure requirement.  It is not implied from Massachusetts's delegation of recordkeeping requirements that the state also delegated its public disclosure obligations.  The Secretary's suggestion that Mass. Gen. L. c. 51 § 55's public disclosure provision represents a delegation of the state's obligations under the NVRA, see D. 32 at 7; D. 33 at 13 ¶ 8, is unpersuasive, particularly given that this state law conflicts with NVRA's public disclosure requirements by "add[ing] limitations to [52 U.S.C. § 20507(i)(1)] where Congress did not," Bellows, 92 F.4th at 48; see Mass. Gen. L. c. 51, § 55 (requiring only that local voter lists "be printed and available for publication distribution not later than the first day of July in state election years"); see D. 34 at 21-22.

---

[5] Comm. for Mass. Voter Identification Ballot Question, 790 F. Supp. 3d at 7, acknowledges but does not address the plaintiff's argument that Massachusetts has "no state statute [that] authorizes delegation to local entities." Id.

Even assuming delegation is proper here, the Court is not convinced that delegating Massachusetts's obligation to disclose local voter lists to local officials allows the Secretary to refuse to fulfill record requests directed to him for records within his possession, D. 34 at 18-23, particularly when his office is the only state entity that can produce such record.  Indeed, all state entities must comply with NVRA disclosure requirements, regardless of which entity is ultimately responsible for enforcing them.  See True the Vote, 43 F. Supp. 3d at 712-13 (noting that both local election officials and chief election official must comply with NVRA's disclosure provision even though "[t]he responsibility to ensure disclosure of required records [] ultimately falls on the State itself, and [the Secretary] as its chief election official").  Permitting states to "abdicate their responsibilities by delegating them to local officials," Harkless v. Brunner, 545 F.3d 445, 453 (6th Cir. 2008), would be at odds with the purpose of the NVRA, the public disclosure provision and similar public disclosure statutes relied upon to interpret the NVRA, D. 30 at 17 n.3; id. at 17-18 (citing Tax Analysts v. U.S. Dep't of Just., 845 F.2d 1060, 1067 (D.C. Cir. 1988) (noting that "in response to a FOIA request, an agency must itself make disclosable agency records available to the public and may not on grounds of administrative convenience avoid this statutory duty by pointing to another public source for the information") (emphasis in original), aff'd, 492 U.S. 136 (1989).

Thus, the Secretary, as the only state entity who maintains the statewide voter list, must produce it.  NVRA case law makes clear that "[t]o the extent a State delegates record-maintenance and disclosure duties to local governments, the State nevertheless remains responsible if documents are not properly disclosed under the Public Disclosure Provision."  True the Vote, 43 F. Supp. 3d at 713; see Comm. for Mass. Voter Identification Ballot Question, 790 F. Supp. 3d at 6 (noting that "[u]ltimately, the responsibility of a chief election official for coordinating each

State's obligations under the NVRA means that official can be sued if a State, either as a whole or through its local subdivisions, fails to comply with the requirements of the NVRA") (collecting cases); see also Harkless, 545 F. 3d at 452 (noting that "if every state passed legislation delegating NVRA responsibilities to local authorities, the fifty states would be completely insulated from any enforcement burdens, even if NVRA violations occurred throughout the state").  Here, the Secretary must produce the full statewide voter list because he is the only election official in Massachusetts who can do so, D. 30 ¶ 12; D. 33 at 5 ¶ 12.  By failing to make this record available to VRF, the Secretary violated the NVRA.

For the aforementioned reasons, VRF is entitled to summary judgment on Count II.

## VI.      Relief

As to relief, VRF requests that the Court (1) issue a declaration that "the Requested Data, including the Registry, are 'records' which must be disclosed under the NVRA's Public Disclosure Provision"; (2) issue a declaration that "the Access Ban is preempted by the Public Disclosure Provision of the National Voter Registration Act and is invalid to the extent of that conflict";[6] (3) "permanently enjoin the [Secretary], his agents, employees, and all persons acting in active concert or participation with them, from enforcing the Access Ban against [VRF], its agents, and others similarly situated, and enjoin the [Secretary] to produce the Requested Data to [VRF]"; (4) "award Plaintiff its costs and expenses incurred in bringing this action, including its attorneys' fees" pursuant to 52 U.S.C. § 20510(c).  D. 1 at Prayer for Relief ¶¶ (a)-(d).

---

[6] These first two requests for relief mirror VRF's third count for declaratory judgment, D. 1 ¶¶ 113-16, which the Court addresses here.  See Gideon v. Wells Fargo Bank, N.A., No. 19-cv-12094-LTS, 2020 WL 1332838, at *1 n.1 (D. Mass. Mar. 23, 2020) (noting that declaratory judgment "[is] not [a] stand-alone cause[] of action but [a] remed[y] a litigant may seek in a prayer for relief").

### A.    Declaratory Judgment

"Pursuant to the Declaratory Judgment Act, a federal district court may, '[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration.'" Transpac Marine, LLC v. Yachtinsure Servs., Inc., 655 F. Supp. 3d 18, 28 (D. Mass. 2023) (alteration in original) (quoting 28 U.S.C. § 2201(a)). "[A] district court has 'complete discretion in determining whether and when to entertain'" a claim for declaratory judgment. Id. (internal quotation marks omitted) (quoting Zurich Am. Ins. V. Watts Regul. Co., 796 F. Supp. 2d 240, 246 (D. Mass. 2011)).

In accordance with its ruling on Counts I and II, the Court concludes that VRF is entitled to declaratory judgment in its favor. To establish that the Access Ban is facially unlawful, VRF "bears the burden to establish on this facial preemption challenge that 'no set of circumstances exists under which the [statute] would be valid.'" NCTA -- The Internet & Television Ass'n v. Frey, 7 F.4th 1, 17 (1st Cir. 2021) (quoting Pharm. Rsch. & Mfrs. of Am. v. Concannon, 249 F.3d 66, 77 (1st Cir. 2001) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). As explained above, "'[t]he plain meaning of the NVRA's disclosure requirement is that disclosure of completed voter registration applications containing [information such as] the address, birth date, and signature of applicants includes disclosure of that information.'" Pub. Int. Legal Found., Inc. v. Bellows, 664 F. Supp. 3d 153, 166 (D. Me. 2023) (quoting Project Vote/Voting for Am., Inc. v. Long, 889 F. Supp. 2d 778, 781 (E.D. Va. 2012)), aff'd, 92 F.4th 36 (1st Cir. 2024). The Court accordingly concludes that the access ban is facially unlawful and unlawful as-applied to VRF and that VRF's requested data are records which must be made publicly available under NVRA's public disclosure provision.

### B.    Permanent Injunction

29

To obtain permanent injunctive relief, a plaintiff "must show actual success on the merits," Caroline T. v. Hudson Sch. Dist., 915 F. 2d 752, 755 (1st Cir. 1990) (citation omitted), and "must satisfy a four-factor test before a court can grant such relief," Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (citation omitted).  A plaintiff must demonstrate "(1) that [they] ha[ve] suffered—or, as here, will suffer—an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  Glob. NAPs, Inc. v. Verizon New England, Inc., 706 F.3d 8, 13 (1st Cir. 2013) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).  "The first two of the four factors are satisfied on a showing of 'substantial injury that is not accurately measurable or adequately compensable by money damages.'"  CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008) (quoting Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir. 2000) (citation and internal quotation marks omitted)).  The last two factors merge when, as here, a government official is the opposing party.  See Does 1-6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021).

The first two factors are satisfied here as VRF has established that the Secretary's denial of voter data to which it is entitled under the NVRA prevents VRF from carrying out its mission of "engag[ing] with the public to ensure the accuracy and currency of state voter rolls" and also prevents it from "lobby[ing] election officials to correct errors before additional elections take place."  D. 30 at 24.  These injuries cannot be remedied by monetary damages.  See Project Vote, Inc., 208 F. Supp. 3d at 1350 (concluding that "[t]here is no monetary remedy that can correct the public's lack of access to information enabling it to ensure the integrity of Georgia's voter registration process").  The last two factors are also met.  The Secretary has not identified any

30

potential hardship from complying with the injunctive relief sought, see D. 32 at 21, and VRF has established that a permanent injunction is in the public interest. See Project Vote/Voting For Am., Inc. v. Long, 813 F. Supp. 2d 738, 744 (E.D. Va. 2011) (concluding that "[t]he balance of hardships does not weigh in favor of the defendant[], as a permanent injunction will simply compel the defendant[] to comply with [his] responsibilities under the NVRA and, thus, will prevent [him] from denying the public of a statutory right"); Project Vote, Inc., 208 F. Supp. 3d at 1351 (concluding that "[t]he public has an interest in seeing that the State [] complies with federal law, especially in the important area of voter registration" and "[o]rdering the state to comply with a valid federal statute is most assuredly in the public interest").

Accordingly, the Court concludes that VRF is entitled to a permanent injunction enjoining the Secretary, his agents, employees, and all persons acting in active concert or participation with them, from enforcing the Access Ban against VRF, its agents and others similarly situated, and enjoining the Secretary to produce the Requested Data to VRF.

### C.    Attorneys' Fees

Under 52 U.S.C. § 20510(c), "[i]n a civil action under this section, the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs." Consistent with this provision, the Court will consider VRF's application for entry of attorneys' fees and costs and gives it until April 23, 2026 to file a motion for same.

## VII.    Conclusion

For the foregoing reasons, the Court ALLOWS VRF's motion for summary judgment, D. 29, and DENIES the Secretary's motion to dismiss and motion for summary judgment, D. 31.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge

31