**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **VOTER REFERENCE FOUNDATION, LLC,**<br>Plaintiff,<br>**v.**<br><br>**WILLIAM GALVIN**, in his official capacity as Secretary of the Commonwealth of Massachusetts,<br>Defendant. | ) | **Civil Action: 1:24-CV-12592-DJC** |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S**
**APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

Plaintiff Voter Reference Foundation LLC ("VRF") is the prevailing party. The Court recognized as much and invited VRF to file an application for attorneys' fees. *See* Memorandum and Order ("Order"), ECF No. 44 at 31. The Court further declined to alter or amend its judgment. ECF No. 50. This application follows.

VRF is entitled to its attorneys' fees and costs under FRCP 54 and the National Voter Registration Act's fee-shifting provision, 52 U.S.C. § 20510(c). ("In a civil action under this section, the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs."). It prevailed on all of its NVRA claims, and all the work done on those claims is recoverable. No segregation or reduction for less than total success is required.

VRF incurred $241,372.49 in litigating this case and filing this fee application, including $235,442.50 in attorneys' fees and $5,929.99 in costs and expenses. That amount will continue to rise if the Secretary opposes this application. VRF asks the Court to award it a total of $241,372.49 for its fees and expenses incurred to date in this case.

## RELEVANT BACKGROUND[1]

### I. VRF & Its Activities

VRF is a non-profit organization dedicated to increasing voter participation in elections while protecting election integrity. ECF No. 44 at 5. It does this by analyzing voter data and making certain data publicly available on its website, VoteRef.com. *Id.* Challenging restrictions on accessing, using, and publishing voter data are germane to VRF's purpose and critical to achieving its mission.

The attorneys' fee award VRF seeks in this matter will enable it to continue to pursue its voter transparency and election integrity efforts in furtherance of its mission, both by requesting and publishing data in other states, and by challenging similar restrictions across the country.

### II. VRF Sues Secretary Galvin After He Refuses to Produce the Statewide Voter List in Violation of the NVRA

On June 27, 2024, VRF requested the Commonwealth's statewide voter list from Secretary Galvin. ECF No. 44 at 5. On July 12, 2024, the Secretary responded that he would not produce the statewide list because it was not a "public record" available from his office. ECF No. 44 at 6. The Secretary claimed, however, that VRF could make individual requests to each of Massachusetts's 351 local election officials to compile the full list. *Id.*

On August 19, 2024, VRF sent a Notice of Violation of the NVRA to the Secretary in which it informed him that he was in violation of the NVRA and that VRF would take legal action if he did not make the requested records available within twenty days. *Id.* at 6. VRF sent a second Notice of Violation on September 10, 2024. *Id.* The Secretary did not respond to either notice. *Id.*

[1] The Court's Order, ECF No. 44, contains extensive background regarding VRF and its activities. The Court's discussion of VRF's background is summarized briefly here for ease of reference.

Because the Secretary refused to comply with his obligations under the NVRA's Public Disclosure Provision, VRF filed its Complaint on October 9, 2024. ECF No. 1. The Complaint included three counts: (1) Count I: Access Ban: Preemption by the National Voter Registration Act 52 U.S.C. § 20507(i); (2) Count II: Violation of NVRA Public Disclosure Provision; Refusal to Fulfill June 27, 2024 Request; 52 U.S.C. § 20507(i)(1); and (3) Count III: Declaratory Judgment. *Id.* All three counts sought to vindicate VRF's rights under the NVRA, presenting contested issues about what records must be made available under the NVRA, which state officer(s) are responsible for fulfilling Massachusetts' NVRA obligations, and what conditions Massachusetts may impose on the NVRA's federal inspection right.

The Secretary answered on November 15, 2024. ECF No. 15. Following a meet and confer between the Parties, the Secretary filed an Amended Answer on December 11, 2024. ECF No. 26.

## III. Discovery

VRF served two rounds of written discovery on the Secretary. VRF issued its first requests for reproduction of documents, interrogatories, and requests for admission on December 18, 2024. VRF issued additional interrogatories and requests for admission on February 26, 2025. VRF also requested and obtained records under the Massachusetts Public Records Act. The Secretary produced nearly eight hundred pages of documents to VRF, which VRF reviewed and analyzed for use on summary judgment. The Secretary did not serve any written discovery on VRF. Neither party conducted depositions or third-party discovery.

## IV. Parties' Cross-Motions for Summary Judgment & the Secretary's Late Attack on VRF's Standing

On April 17, 2025, VRF filed a motion for summary judgment on all three counts. ECF No. 29 (Motion); ECF No. 30 (Brief in Support). On May 9, 2025, the Secretary filed an opposition to VRF's motion for summary judgment. ECF No. 32. At the same time, the Secretary filed a

cross-motion for summary judgment and motion to dismiss, arguing for the first time in the case that VRF lacked standing to pursue its claims under the NVRA. ECF No. 31. On May 23, 2025, VRF filed a combined reply in support of its motion for summary judgment and response to the new motion to dismiss. ECF No. 34.

After briefing closed but before the hearing, Judge Gorton decided a case involving similar issues. *See Committee for Massachusetts Voter Identification Ballot Question v. Galvin*, No. 1:24-cv-12029-NMG. The Secretary filed a notice of supplemental authority alerting the Court to that decision. ECF No. 39. VRF filed a response to that notice. ECF No. 40.

The Court held a hearing on the cross-motions for summary judgment on July 23, 2025. *See* Electronic Clerk's notes, dated July 23, 2025. VRF attorneys Eddie Greim and Michael Sullivan appeared at the hearing. Attorneys Phoebe Fischer-Groban and Anne Sterman appeared on behalf of the Secretary. Following the argument, the Court took the cross-motions for summary judgment and the Secretary's motion to dismiss under advisement.

After the hearing, the United States Court of Appeals for the Tenth Circuit affirmed the decision of the United States District Court for the District of New Mexico in VRF's favor in a substantially similar case. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025). VRF filed a notice of supplemental authority alerting the Court to that decision. ECF No. 43. The Secretary did not respond.

## V. The Court Holds that VRF has Standing and Rules in its Favor on Summary Judgment

On March 26, 2026, the Court granted VRF's motion for summary judgment and denied the Secretary's cross-motion for summary judgment and motion to dismiss. *See generally*, Order, ECF No. 44. The Court rejected the Secretary's argument that VRF does not have standing. *Id.* at 7-14. It further held that the NVRA preempts the Secretary's access ban and the publication

restrictions under the Secretary's licensing agreement. *Id.* at 14. The Court agreed that VRF was entitled to receive the records it sought directly from the Secretary, rather than having to obtain the same list in piecemeal fashion through 351 separate local election officials. *Id.* at 14-19; 24-28.

The Court awarded VRF relief consistent with its ruling. *Id.* at 28-31. It declared "that the access ban is facially unlawful and unlawful as-applied to VRF and that VRF's requested data are records which must be made publicly available under NVRA's public disclosure provision." *Id.* at 29. The Court also "conclude[d] that VRF is entitled to a permanent injunction enjoining the Secretary, his agents, employees, and all persons acting in active concert or participation with them, from enforcing the Access Ban against VRF, its agents and others similarly situated, and enjoining the Secretary to produce the Requested Data to VRF." *Id.* at 31. As reflected in the Order, the relief granted was consistent with the relief VRF sought in its Complaint. *See id.* at 28 (discussing VRF's prayer for relief). Finally, the Court invited VRF to file this application:

> Under 52 U.S.C. § 20510(c), "[i]n a civil action under this section, the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs." Consistent with this provision, the Court will consider VRF's application for entry of attorneys' fees and costs and gives it until April 23, 2026 to file a motion for same.

*Id.* at 31. Per VRF's request, the Court subsequently extended the deadline for this fee application until seven days after it resolved the Secretary's motion to alter or amend the judgment, discussed below. *See* ECF No. 46.

## VI. The Court Denies the Secretary's Motion to Alter or Amend the Judgment

On April 23, 2026, the Secretary filed a motion to alter or amend the judgment arguing that he had disputed that the statewide voter list is a record that must be made available under the NVRA. ECF No. 45, 48. VRF opposed the Secretary's motion. ECF No. 49.

On September 24, 2026, the Court denied the Secretary's motion and affirmed its prior

conclusion that, as a matter of law, the full statewide voter list is a record within the meaning of the NVRA and must be made publicly available as such. ECF No. 50. The Court further noted, "To the extent that the [Secretary] was making a distinction between the underlying voter information as opposed to the statewide voter list itself made no difference in the Court's conclusion that the statewide voter list is a record under the NVRA for the reasons otherwise stated in the Court's legal analysis[.]" *Id.*

VRF timely files this application, consistent with its assented-to motion for an extension of time to file an application for attorneys' fees within seven days of the Court's order on the Secretary's motion to alter/amend. *See* ECF No. 45, 46.

## ARGUMENT

The NVRA provides "[i]n a civil action under this section, the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs." 52 U.S.C. § 20510(c). As the Court recognized in its order, VRF is the prevailing party under the NVRA. *See* Order, ECF No. 44 at 31.

VRF was represented by experienced and capable election law and civil rights litigation counsel, and its fees and costs incurred were reasonable in the context of this case given that VRF achieved complete success on all claims. Thus, it is entitled to recover all of its attorneys' fees and costs reasonably incurred during this litigation.

### I. VRF is the Prevailing Party

VRF is the prevailing party under 52 U.S.C. § 20510(c). It prevailed on each of its NVRA claims and theories and was awarded all the relief it sought. The Secretary's cross-motion for summary judgment and his motion to dismiss were both denied. His motion to alter or amend the judgment was also denied.

"To qualify as a prevailing party, a litigant must show that a material alteration of the parties' legal relationship has taken place as a result of the litigation." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011). A litigant must also show a "judicial *imprimatur* on the change," that is, (1) that it has "received a judgment on the merits" or (2) that it has "obtained a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

The Court entered judgment on the merits and substantial relief in VRF's favor. ECF No. 44. VRF's relief was confirmed by the Court's order denying the Secretary's motion to alter or amend the judgment. ECF No. 50. This "favorable judgment on the merits" renders VRF the prevailing party. *See Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 453 (1st Cir. 2009).

**II. VRF should be awarded its reasonable attorneys' fees, expenses, and costs.**

The NVRA provides "[i]n a civil action under this section, the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs." 52 U.S.C. § 20510(c). Courts apply the same standards applicable to other federal civil rights fee shifting statutes when considering an award under this section. *See, e.g.*, *Voter Reference Found., LLC v. Torrez*, No. 1:22-cv-00222-JB-KK (D.N.M. Sept. 22, 2025) (ECF No. 213); *Project Vote v. Blackwell,* No. 1:06-cv-1628, 2009 WL 917737, at *4 & n. 7, 2009 U.S. Dist. LEXIS 34571, at *15 & n. 7 (N.D. Ohio Mar. 31, 2009); *Nat'l Coalition for Students with Disabilities v. Bush,* 173 F.Supp.2d 1272, 1276 (N.D. Fl. 2001). Like § 1988, the award of fees and costs under the NVRA is permissive, but a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Nat'l Coalition for Students with Disabilities,* 173 F.Supp.2d at 1276 ("Although these attorney's fee provisions speak in discretionary terms, a prevailing plaintiff ordinarily is entitled to an award of fees, unless special circumstances would render such

an award unjust. *See, e.g.*, *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968); *Riddell v. National Democratic Party*, 624 F.2d 539, 543 (5th Cir.1980).”). “Prevailing parties in civil rights cases also may recover reasonable attorneys’ fees incurred in successfully litigating a variety of post-judgment motions.” *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008).

“A reasonable fee typically is determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure.” *Id.* at 336. “In implementing this lodestar approach, the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved).” *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). This lodestar figure “provides an objective basis on which to make an initial estimate of the value” of an attorney’s services. *Hensley*, 461 U.S. at 433. The prevailing party requesting an award of its fees must submit evidence to support its claim of time spent and rates claimed. *See id.* at 434.

“Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on [the] litigation.” *Id.* at 435. Indeed, the base figure of a lodestar calculation may also be adjusted upward based on the magnitude of success. *See De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 207 (1st Cir. 2009). “In making such adjustments, however, *Hensley* requires that lower courts make qualitative comparisons among substantive claims before adjusting the lodestar either for excellent results or limited success.” *Id.* The district court must consider the relationship between the fees awarded and the degree of success obtained and make a qualitative assessment to determine when

limited results will nonetheless justify full recovery or to what extent a plaintiff's "limited success" should reduce the lodestar. *Id.* "There is no precise rule or formula" for making such determinations. *Hensley*, 461 U.S. at 436.

**a. The hours expended by VRF's attorneys were reasonable given the nature and complexity of this litigation.**

The hours expended in this case, as detailed in Section II.b. below, were reasonable given that this case presented novel issues regarding whether a State's Chief Election Official can sidestep the NVRA's Public Disclosure Provision by delegating his duty to produce voter data pursuant to local officials, as well as complex issues of whether the Commonwealth's ban on publishing voter data on the Internet violated the NVRA and VRF's speech rights. This case further involved complicated issues of Article III standing in the context of a violation of the NVRA's Public Disclosure Provision requiring a response to a late motion to dismiss. It also required additional time to respond to the Secretary's motion to alter or amend the judgment.

VRF's counsel maintained sufficiently detailed and contemporaneous time records and reviewed such time records before billing VRF. Further, as addressed in his declaration, Attorney Eddie Greim monitored the work performed in this matter and where appropriate, eliminated entries that were redundant or excessive, such that VRF was only billed for time that was reasonable and necessary for the success of this litigation. *See* Ex. 1, Declaration of Edward Greim ("Greim Dec.") at ¶ 9.

However, "[p]laintiff's counsel . . . is not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12. Rather, "counsel should identify the general subject matter of his time expenditures." *Id.* So long as time entries describe "the kind of activity (e.g., 'spoke w/', 'met w/', drafted letter', 'reviewed letter', 'deposition', 'hearing', etc.), as well as the other person or group involved, and, usually, the subject matter (e.g., 'on budget',

'on crisis intervention program', 'on deposition')," the court has "the necessary keys to testing [the entries'] reasonableness." *Brewster v. Dukakis*, 786 F.2d 16, 18-19 (1st Cir. 1986).

**b. The rates charged by VRF's attorneys are reasonable in the Boston market given their specialized experience in election law and constitutional litigation.**

Once the court determines the reasonableness of the hours requested by Plaintiff, the next step in the lodestar analysis is to determine "a reasonable hourly rate or rates – a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 289 (1989) (paralegal and law clerk services are recoverable in a motion for attorneys' fees). These rates must "be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 892 (1984); *see Castaneda-Castillo v. Holder*, 723 F.3d 48, 56 n.4 (1st Cir. 2013). Fee awards should "encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986).

The chart below displays a breakdown of the number of hours worked by each legal professional, the rates billed to VRF, and the total amount VRF seeks for each legal professional[2]:

| Professional | Role | 2024 rate (hrs) | 2025 rate (hrs) | 2026 rate (hrs) | Total Hours | Total Fees |
|---|---|---|---|---|---|---|
| Edward D. Greim | Partner (22+ years) | $680 (17.7) | $725 (34.7) | $765 (5.6) | 58.0 | $41,477.50 |
| Matthew R. Mueller | Partner (9+ years) | $420 (69.6) | $495 (130.5) | $525 (30.7) | 230.8 | $109,947.00 |

[2] The amounts reflected in this chart are slightly lower than the invoiced totals because GGG has excluded certain amounts billed to the client that it does not seek to recover in this fee application.

| Professional | Role | 2024 rate (hrs) | 2025 rate (hrs) | 2026 rate (hrs) | Total Hours | Total Fees |
|---|---|---|---|---|---|---|
| Jackson Tyler | Associate (3-5 years) | $395 (64.4) | — | — | 64.4 | $25,438.00 |
| Salvatore Paris | Associate (0-3 years) | $355 (26.0) | $395 (0.3) | — | 26.3 | $9,348.50 |
| Sarah Rafie Pineau | Associate (9+ years) | — | — | $475 (32.0) | 32.0 | $15,200.00 |
| Adam Ryan | Associate/Law Clerk | — | $250 (16.5) | — | 16.5 | $4,125.00 |
| Autumn H. Duncan | Associate/Law Clerk | — | $250 (1.8) | — | 1.8 | $450.00 |
| Rebekah S. Smith (f/k/a Badell) | Paralegal | $255 (3.6) | $265 (7.2) | — | 10.8 | $2,826.00 |
| Christina Black | Paralegal | — | — | $285 (9.0) | 9.0 | $2,565.00 |
| Nichole E. Kruger | Paralegal | — | — | $285 (1.8) | 1.8 | $513.00 |
| **Graves Garrett Greim — TOTAL** | | | | | **451.4** | **$211,890.00** |

Given the complexity of the issues involved in constitutional and civil rights litigation such as this, particularly when novel questions of Article III standing are involved, clients such as VRF regularly pay GGG its normal hourly rates to benefit from GGG's knowledge and experience in this area. *See* Ex. 1 ¶ 16, Greim Dec. As stated by Attorney Greim, there are not many attorneys in the Boston area that engage in NVRA litigation, and even fewer in private practice. *Id.* ¶14. This case was vigorously and successfully litigated and included an unexpected late-stage challenge to VRF's standing. Based on the subject matter involved, the demands of the case, and the prevailing rates in the Boston market and nationwide, the fees VRF seeks are reasonable. *Id.* ¶13.

Because Attorneys Greim and Mueller are not licensed in Massachusetts, the use of local counsel was required by this Court's rules. Local Rule 83.5.3(e). VRF incurred fees amounting to $23,552.50 for services performed by local counsel Michael Sullivan and his colleagues at The Ashcroft Law Firm. *See* Ex. 2, Declaration of Michael Sullivan ("Sullivan Dec."). Mr. Sullivan

billed 15 hours at rates of $925 per hour prior, for a total of $13,875.00. *Id.* ¶ 2. This amount includes a reduction of 7.6 hours or $7,030.00. *Id.* Mr. Sullivan's associate, Chris Amrhein, billed 24.5 hours at $395 per hour for a total of $9,677.50. *Id.* ¶ 3. This amount includes a reduction of 6.7 hours or $2,646.50. *Id.* Based on the subject matter involved, the demands of the case, and the prevailing rates in the Boston area, the fees VRF seeks are reasonable in time and amount. *See* Ex. 1, Greim Dec.; Ex. 2, Sullivan Dec. Attorney Sullivan's declaration likewise attests that the fees VRF seeks are reasonable for the Boston market. *See* Ex. 2, Sullivan Dec.

| **Professional** | **Role** | **Rate (hrs)** | **Total Hours** | **Total Fees** |
|---|---|---|---|---|
| Michael J. Sullivan | Partner | $925 (15.0) | 15.0 | $13,875.00 |
| Christopher Amrhein | Associate | $395 (24.5) | 24.5 | $9,677.50 |
| **The Ashcroft Law Firm — TOTAL** | | | **39.5** | **$23,552.50** |

These rates are in the approximate range, adjusted for inflation, that other courts in this district have found reasonable for similarly experienced attorneys. *See, e.g.*, *Tuli v. Brigham & Women's Hosp., Inc.*, 2009 WL 10693567, at *2 (D. Mass. June 8, 2009) (finding rates of up to $735 for partners and $495 for associates reasonable); *Alexander v. Mass. Dep't of Corr.*, 2024 WL 2013852, at *3 (D. Mass. May 7, 2024) (finding $560–$600 per hour was reasonable for a law firm partner with twenty-nine years of experience and $365–$385 per hour was reasonable for an associate with five years of experience); *Cox v. Mass. Dep't of Corr.*, 2019 WL 2075588, at *8 (D. Mass. May 20, 2019) (compensating lead attorney with twenty-seven years of experience at $450 per hour in prisoner civil rights case).

Finally, there is no concern here that the fee award would result in a "windfall[] to attorneys at the expense of clients." *Dine v. Colvin*, 2016 WL 7256762, at *2 (D. Mass. Dec. 15, 2016). VRF

has already paid its attorneys. The requested fee award will make VRF whole for the actual costs it has incurred to date.

### III. VRF is entitled to its fees and costs incurred in preparing and litigating this motion.

VRF is entitled to its reasonable fees and costs incurred in preparing its motion for attorney's fees, brief in support, and other supporting documentation. *See e.g.*, *Torres-Rivera*, 524 F.3d at 340 ("A prevailing party in a civil rights action normally is entitled to attorneys' fees incurred in the pursuit of fees under section 1988."). Those fees are included in the invoices attached as in Exhibit A to the Greim Declaration.

VRF reserves its right to supplement this application with additional fees and costs incurred in litigating the fee issue before the Court.

### IV. VRF's costs and expenses incurred are reasonable and should be awarded to it.

VRF reasonably incurred $5,929.99 in costs and expenses required by this litigation and is entitled to recover those costs and expenses under one or both of the NVRA and FRCP 54. Of its total costs and expenses, $508.60 are taxable under FRCP 54(d)(1) and 28 U.S.C. § 1920. The remainder of the costs and expenses—$5,421.39—are not taxable under FRCP 54 but are nevertheless recoverable. 52 U.S.C. § 20510(c) (allowing prevailing party "reasonable attorney fees, including litigation expenses, and costs").

#### a. VRF's taxable costs under FRCP 54.

VRF incurred $508.60 in taxable costs for filing fees and process service fees under Rule 54(d)(1) of the Federal Rules of Civil Procedure, which provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). A district court has discretion in deciding whether to award costs. *B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 28 (1st

Cir. 2008). There are, however, some limitations on a district court's discretion. *Id.* First, "[t]here is a background presumption favoring cost recovery for prevailing parties," and awarding costs to a prevailing party "is the norm." *In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 963 (1st Cir. 1993). Second, if a court chooses not to award costs to a prevailing party, it must provide a valid reason for doing so, unless the basis for the denial is "readily apparent on the face of the record." *B. Fernandez*, 516 F.3d at 28.

**b. VRF's non-taxable costs and expenses.**

VRF's non-taxable expenses amount to $5,421.39 and fall into 3 primary categories: travel, legal research, and miscellaneous. VRF incurred $615.70 for travel-related expenses. These expenses were incurred for travel from Kansas City to Boston for the summary judgment hearing on July 23, 2025, where it was reasonable and necessary for VRF's counsel to be present in person.

VRF incurred $4,372.19 in legal research costs, consisting of fees charged by Westlaw and LexisNexis for legal research and fees assessed by PACER to access court dockets in this case and other cases whose filings were relevant to the litigation here.

VRF incurred $433.50 in miscellaneous costs (including printing costs and pro hac vice filing costs) related to the case.

As addressed in the Greim Declaration (Ex. 1) these costs were reasonably and necessarily incurred. Given the success of VRF's efforts, it should recover these costs from the Secretary. *See* 52 U.S.C. § 20510(c) (allowing for award of "reasonable attorney fees, including litigation expenses, and costs" to prevailing party).

## CONCLUSION AND PRAYER FOR RELIEF

Based on the foregoing authorities and evidence, VRF respectfully requests that the Court allow this application and award it $235,442.50 in attorney's fees and $5,929.99 in costs/expenses incurred by VRF in litigating this case and preparing this fee application, for a total of $241,372.49.

Respectfully submitted this 1st day of October, 2026

**GRAVES GARRETT GREIM LLC**
*/s/ Edward D. Greim*
Edward D. Greim (MO 54034)*
Matthew R. Mueller (MO 70263)*
**Admitted Pro Hac Vice*
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com
mmueller@gravesgarrett.com

**ASHCROFT LAW FIRM**
Michael Sullivan (MA Bar #487210)
200 State Street, 7th Floor
Boston, MA 02109
Tel: (617) 573-9400
msullivan@ashcroftlawfirm.com

*Counsel for Plaintiff Voter Reference Foundation, LLC*

## CERTIFICATE OF SERVICE (LR 5.2)

I certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 1, 2026.

*/s/ Edward D. Greim*
Edward D. Greim